UNITED STATES of America,
Plaintiff-Appellee,

v.

Alcee L. HASTINGS, Defendant,

Post-Newsweek Stations, Inc., et al.,
Intervenors-Appellants.

No. 82–6137
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 4, 1983.

Rehearing En Banc Denied May 2, 1983,
see 704 F.2d 559.

Steel, Hector & Davis, Talbot D'Alemberte, Donald M. Middlebrooks, Thomas R. Julin, Miami, Fla., for Post-Newsweek Stations, Inc., Wometco, Outlet Broadcasting, Miami Herald, Radio-Television News Director Ass'n, etc.

Erwin G. Krasnow, Sr. Vice President and Gen. Counsel, Nat. Ass'n of Broadcasters, Washington, D.C., Sara Rose Mullens, Corporate Counsel, Wometco Enterprises, Inc., Miami, Fla., Stephen E. Nevas, First Amend. Counsel, Nat. Ass'n of Broadcasters, Washington, D.C., for Community Television Foundation of South Florida, Inc.

Stephen T. Maher, Miami, Fla., for American Civil Liberties Union Foundation of Fla., Inc.

Walter Terry Maguire, Washington, D.C., for amicus curiae American Newspapers Publishers Ass'n.

Robert S. Catz, Cleveland, Ohio, Terence J. Anderson, Coral Gables, Fla., for Hastings.

Reid Weingarden, Robert Richter, Jo Ann Farrington, Dept. of Justice, Crim. Div., Washington, D.C., for U.S.

Before RONEY, VANCE and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

This expedited appeal presents the question whether federal rules which prohibit televising, broadcasting, recording, and photographing proceedings in federal criminal trials violate the First Amendment[1] or the Sixth Amendment.[2] In an order denying appellants' application to use electronic audio-visual recording devices during the upcoming trial, the district court cited four rules and authorities, including Rule 53 of the Federal Rules of Criminal Procedure[3] (referred to as Rule 53) and Rule 20 of the General Rules of the United States District Court for the Southern District of Florida (referred to as Local Rule 20).[4] We affirm the district court's order, as we hold that Rule 53[5] and Local Rule 20 violate neither the First Amendment nor the Sixth Amendment.

This issue first came before the trial court when the defendant, Alcee L. Hastings, moved the trial court to permit his trial to be televised, primarily relying on his Sixth Amendment right to a public trial.[6]

---

1. "Congress shall make no law ... abridging the freedom of speech, or of the press." U.S. Const. amend. I.

2. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. It is argued that the Sixth Amendment entitles the criminal defendant herein to "a trial which is as public as the limits of technology permit." Brief for Amicus Curiae, Alcee L. Hastings, at 2.

3. Fed.R.Crim.P. 53 provides that "taking of photographs in the court room during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the court room shall not be permitted by the court." Congress authorized the Supreme Court to develop the Federal Rules of Criminal Procedure. 18 U.S.C. § 3771.

4. Local Rule 20 provides:
   Other than required by authorized personnel in the discharge of official duties, all forms of equipment or means of photographing, tape-recording, broadcasting or televising within the environs of any place of holding court in the District, including courtrooms, chambers, adjacent rooms, hallways, doorways, stairways, elevators, or offices of supporting personnel whether the Court is in session or at recess, is prohibited; provided that photographing in connection with naturalization hearings or other special proceedings, as approved by a Judge of this Court, will be permitted.
   Local Rule 20 is promulgated pursuant to 28 U.S.C. § 2071 (authorizing the federal courts to "prescribe rules for the conduct of their business").

   The district court cited two other authorities, Canon 3 A(7) of the Code of Judicial Conduct for United States Judges and Resolution G of the Judicial Conference of the United States. In our judgment, the district court was bound by Rule 53 and Local Rule 20. Hence, we do not need to consider whether Canon 3 A(7) and Resolution G violate the First Amendment.

5. Appellants argue that Rule 53 does not, by its terms, ban television cameras in the courtroom. Appellants' Brief at 42. In our view, the time for serious consideration of this interpretation has long since passed. See *Estes v. Texas,* 381 U.S. 532, 581–82, 85 S.Ct. 1628, 1652–53, 14 L.Ed.2d 543 (1965). In any event, we need not reach the question of the precise meaning of Rule 53 because the district court applied Rule 53 in conjunction with Local Rule 20. Since Local Rule 20 clearly prohibits television cameras in the courtroom, we cannot avoid reaching the constitutional issue. Moreover, appellants seek permission for photographing and radio broadcasting, two activities which Rule 53 clearly proscribes.

6. Since 1979 Hastings has been a federal judge for the United States District Court for the Southern District of Florida. On December 29, 1981, he was indicted for conspiracy and obstruction of justice. The indictment accused him of accepting a bribe from an undercover agent posing as a criminal defendant. Judge Hastings voluntarily removed himself from his duties while his trial is pending. He favors

Shortly thereafter, appellants, representing the interests of numerous news organizations, filed a motion to intervene. In this motion, appellants, citing their First Amendment rights, applied to the trial court for an order permitting them to use electronic audio-visual equipment during the trial. After holding a hearing on the issue, the district court denied both motions on November 30, 1982. Trial was set to begin on January 10, 1983. Appellants filed a motion in this court for expedited appeal. The motion was granted, and this appeal followed.[7] Although defendant Hastings has not joined this appeal, he has filed an amicus brief.

## I. FIRST AMENDMENT

Appellants suggest that recent Supreme Court opinions indicate that the First Amendment should be extended to give the news media the right to televise, photograph, record, and broadcast federal criminal trials. We disagree with appellants' approach. Appellants' approach reflects a tortured reading of these Supreme Court opinions. None of those decisions intimate that the Supreme Court would find First Amendment rights abridged by the exclusion of television cameras and other electronic recording devices from the courtroom. See *Globe Newspaper Co. v. Superior Court,* —— U.S. ——, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (invalidated on First Amendment grounds a state statute which totally excluded the press and the general public from the courtroom in trials for certain sex offenses during the testimony of victims under the age of 18); *Chandler v. Florida,* 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981) (state's provision for television coverage of a criminal trial for public broadcast is constitutional); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (state

trial court's order that closed the murder trial to the public and the press violated the First Amendment).

Instead, these recent Supreme Court rulings stand for two propositions, neither of which is dispositive or even genuinely at issue here. First, television coverage of a criminal trial is not inherently unconstitutional. In particular, television coverage does not violate every defendant's due process rights. *Chandler v. Florida,* 449 U.S. at 574–81, 101 S.Ct. at 809–13. But just because television coverage is not constitutionally prohibited does not mean that television coverage is constitutionally mandated.

Second, the press has a right of access to observe criminal trials, just as members of the public have the right to attend criminal trials. *Globe Newspaper Co. v. Superior Court,* —— U.S. at —— ——, 102 S.Ct. at 2618–19, 73 L.Ed.2d at 255–57; *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 579–80, 100 S.Ct. at 2828–29. To conclude from these cases, as appellants do, that the right of access extends to the right to televise, record, and broadcast trials, misconceives the meaning of the right of access at stake in those cases. The right of access therein was the right to attend. In the upcoming trial here, journalists will be able to attend, listen, and report on the proceedings as they always have. No part of the trial has been closed from public scrutiny.

With regard to the right of access, appellants overlook the significance of another recent Supreme Court opinion, *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). That case concerned the Watergate tapes, which had been admitted into evidence in the trial of Nixon's former advisers. At trial, the district court supplied earphones to jurors, journalists, and members of the public to enable them to listen to the tapes. The

---

televising of his trial so that his reputation can be restored.

7. This court has jurisdiction to review the order at this time. *See Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

court also released transcripts prepared by the Special Prosecutor which "were widely reprinted in the press." 435 U.S. at 594, 98 S.Ct. at 1310. After the trial had begun, Warner Communications asked the district court for permission to copy, broadcast, and sell the tapes admitted in evidence. The district court denied this request. The Supreme Court, in upholding the district court's decision, rejected Warner Communications' assertion of a First Amendment right to copy and publish the tapes. 435 U.S. at 608–09, 98 S.Ct. at 1317. Justice Powell, writing for a majority of the Court, reasoned that:

> The First Amendment generally grants the press no right to information about a trial superior to that of the general public. "Once beyond the confines of the courthouse, a news-gathering agency may publicize, within wide limits, what its representatives' have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the public."

435 U.S. at 609, 98 S.Ct. at 1317 (quoting *Estes v. Texas,* 381 U.S. 532, 589, 85 S.Ct. 1628, 1663, 14 L.Ed.2d 543 (1965) (Harlan, J., concurring)). The Court explicitly rejected the broadcaster's claim that the right of access includes "the right to copy and publish.... exhibits and materials displayed in open court." 435 U.S. at 609, 98 S.Ct. at 1317. *See also Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 426–27 (5th Cir.1981) (the press has no First Amendment right of physical access to audiotapes which recorded conversations between defendants and FBI agents and which were introduced into evidence).[8]

In *Warner Communications, Inc.* the Supreme Court rejected a First Amendment claim of right to copy and publish particular exhibits which had been admitted into evidence. In the instant case, appellants assert a First Amendment right to record and broadcast the entire trial. Appellants' claim more nearly approximates the claim

rejected in *Warner Communications, Inc.* than the claims which were sustained in *Globe Newspaper Co. v. Superior Court, supra,* and *Richmond Newspapers, Inc. v. Virginia, supra.*

On the other hand, this case can be distinguished factually from *Nixon v. Warner Communications, Inc.* and *Belo Broadcasting Corp. v. Clark* in two ways. First, the rules at issue here are absolute rules which prohibit televising, recording, photographing and broadcasting federal criminal trials, whereas the rules challenged in *Warner Communications* and *Belo Broadcasting* resulted from fact-sensitive determinations made by the trial judge on a case-by-case basis. Second, in the instant case, defendant Hastings has not only requested television coverage, but he has also knowingly and intelligently waived any objection he might have had. There was no such request or waiver in either *Warner Communications* or *Belo Broadcasting.*

In our judgment, neither distinction undermines the precedential value for this case of *Warner Communications* and *Belo Broadcasting.* We address first the distinction between an absolute per se rule and a case-by-case rule. In *Globe Newspaper Co. v. Superior Court,* —— U.S. ——, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), the Supreme Court made it clear that an absolute per se rule which excludes the public and the press from a criminal trial is prohibited by the First Amendment. However, the rule struck down in *Globe Newspaper Co.* was significantly different from the rules at issue here. In *Globe Newspaper Co.,* the state statute provided that the courtroom be sealed off from public scrutiny whenever minor victims of sex offenses testified at the sex offender's trial. As a result, the alleged victim's testimony, which is likely to be the most critical evidence presented at such a trial, was obscured from the view of the press and the public. By contrast, the rules here do not foreclose public scrutiny of the trial or any segment thereof.

---

**8.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

In evaluating the state statute in *Globe Newspaper Co.*, the Supreme Court said that denial of "the right of access in order to inhibit the disclosure of sensitive information" must be "necessitated by a compelling governmental interest" and "narrowly tailored to serve that interest." *Id.* —— U.S. at ——, 102 S.Ct. at 2620, 73 L.Ed.2d at 257. Significantly, the mandatory statute in *Globe* was deemed to violate the "narrowly tailored" test: "In short, § 16A cannot be viewed as a narrowly tailored means of accommodating the State's asserted interest." *Id.* —— U.S. at ——, 102 S.Ct. at 2620, 73 L.Ed.2d at 258. However, the Supreme Court expressly noted that "limitations on the right of access that resemble 'time, place, and manner' restrictions on protected speech . . . would not be subjected to such strict scrutiny." *Id.* —— U.S. at ——, 102 S.Ct. at 2620, n. 17, 73 L.Ed.2d at 257, n. 17. (citation omitted). This was in contrast to the strict scrutiny which was applied to the *Globe* restriction which totally excluded the public and the press from certain parts of the trial.

The federal rules in the case before us resemble "time, place, and manner" restrictions. Rule 53 and Local Rule 20 do not absolutely bar the public and the press from any portion of a criminal trial; rather, they merely impose a restriction on the *manner* of the media's news gathering activities. The press is free to attend the entire trial, and to report whatever they observe. Thus, we conclude that strict scrutiny does not apply in the instant case, and that the per se rules here might well survive the lesser level of scrutiny which is applicable, even though the mandatory rule in *Globe Newspaper Co.* could not survive strict scrutiny.

Before defining the appropriate level of scrutiny applicable in this case and applying that scrutiny to the instant facts, we return briefly to the second factor mentioned above as distinguishing the instant case from *Nixon v. Warner Communications, Inc.* and *Belo Broadcasting Corp. v. Clark.* The fact that the defendant here has affirmatively requested television coverage and waived any objection thereto does eliminate one of the most important factors justifying a ban on electronic media news gathering. However, as discussed below, there are other interests supporting the rule which must be weighed against the countervailing interests pursuant to the appropriate level of scrutiny.

■ We derive from recent Supreme Court cases the appropriate level of scrutiny for a "time, place, and manner" regulation that restricts access in the courtroom. Such a restriction is constitutional if it is reasonable,[9] if it promotes "significant governmental interests,"[10] and if the restriction does not "unwarrantedly abridge . . . . the opportunities for the communication of thought."[11]

Having defined the appropriate level of scrutiny, we turn next to a discussion of the competing interests which must be weighed.

9. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 600, 100 S.Ct. at 2840 (Stewart, J., concurring in judgment) ("Just as a legislature may impose *reasonable* time, place, and manner restrictions upon the exercise of First Amendment freedoms, so may a trial judge impose *reasonable* limitations upon the unrestricted occupation of a courtroom by representatives of the press and members of the public.") (emphasis added).

10. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 63 n. 18, 96 S.Ct. 2440, 2448 n. 18, 49 L.Ed.2d 310 (1976) ("Reasonable regulations of the time, place, and manner of protected speech, where those regulations are necessary to further *significant governmental interests,* are permitted by the First Amendment.") (emphasis added).

11. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 581, n. 18, 100 S.Ct. at 2829, n. 18 (citing *Cox v. New Hampshire,* 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941)) ("Just as a government may impose reasonable time, place, and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic . . . so may a trial judge in the interest of the fair administration of justice, impose reasonable limitations on access to a trial. '[T]he question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge . . . the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.' ").

Addressing first the interests which tend to support the media ban, we note that the highly significant interests of a defendant in obtaining a fundamentally fair trial are eliminated from our consideration in this case because defendant Hastings has expressly waived all such objections. However, at least two other institutional interests support the ban. First, courts have an interest in preserving order and decorum in the courtroom. *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970). Second, there is an institutional interest in procedures which tend to insure a fair trial.[12] Stated another way, there is an institutional interest in procedures designed to increase the accuracy of the essential truth-seeking function of the trial. In *Estes v. Texas,* 381 U.S. 532, 544–51, 85 S.Ct. 1628, 1633–37, 14 L.Ed.2d 543 (1965), the Supreme Court, noting how television could impair the truth-finding function of the criminal trial, wrote at length about television's probable adverse impact on jurors, witnesses, and other trial participants.[13] While the Court in *Chandler v. Florida,* 449 U.S. at 575–78, 101 S.Ct. at 809–11, acknowledged that technological improvements and the safeguards embodied in Florida's experiment may have muted some of the effects enumerated by the *Estes* court, nevertheless the *Chandler* court concluded that the effect of television coverage on trial participants is "still a subject of sharp debate." *Id.* 449 U.S. at 578, 101 S.Ct. at 811.

Turning now to the interests which tend to favor permitting the media coverage, three First Amendment concerns have been articulated by recent Supreme Court cases. First, the right of access to criminal trials fosters public confidence in the fairness of the criminal justice system. *Globe Newspaper Co. v. Superior Court,* —— U.S. at ——, 102 S.Ct. at 2620, 73 L.Ed.2d at 257. *Gannett Co. v. DePasquale,* 443 U.S. 368, 382, 99 S.Ct. 2898, 2907, 61 L.Ed.2d 608 (1979). Second, the right of access allows the public to operate as a check on potential abuses in the judicial system. *Globe Newspaper Co. v. Superior Court,* —— U.S. at ——, 102 S.Ct. at 2620, 73 L.Ed.2d at 257. Finally, the right of access promotes the truth-finding function of the trial. *Id.; Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 569, 100 S.Ct. at 2823 (plurality opinion). In our judgment, the foregoing First Amendment concerns would be furthered by the media access sought here only to a minimal degree, if at all. The key factor affecting public confidence is the fact that trials are open and subject to public scrutiny, i.e., that trials are not secret. We can foresee no additional measure of confidence which might emanate merely from the different manner of media access, e.g., excerpts of live witnesses on the television screen, as opposed to an artist's sketch. *See United States v. CBS, Inc.,* 497 F.2d 102, 106 (5th Cir.1974). Similarly, we do not conceive that the requested manner of access would enhance either the function of public trials as a check on judicial abuses, or the truth-finding role. To the contrary, the Supreme Court has indicated that the central truth-seeking function of the criminal trial could be adversely affected by television coverage, with its adverse impact on jurors, witnesses, and other trial participants. *Estes v. Texas,* 381 U.S. at 544–50, 85 S.Ct. at 1633–36; *Chandler v. Florida,* 449 U.S. at 575–78, 101 S.Ct. at 809–11.

■ Weighing the countervailing interests in favor of and opposed to the media ban embodied in Rule 53 and Local Rule 20,

---

**12.** *Cf. Gannett Co. v. DePasquale,* 443 U.S. 368, 398, 99 S.Ct. 2898, 2914, 61 L.Ed.2d 608 (1979) (Powell, J., concurring) (The government, as well as the defendant, has an interest in obtaining "just convictions.").

**13.** Appellants argue that the district court accepted as true their proffer that the media activities in the instant case would be unobtrusive. Thus they argue that we are presented with a unique case in which there is absolutely no legitimate interest favoring the media ban. Appellants' argument is without merit. The district court decided that it was bound by Rule 53 and Local Rule 20 and thus that an individualized consideration of the facts in this case—i.e., whether or not the media would be obstrusive—was therefore inappropriate. Thus, there is no merit in appellants' suggestion that the institutional interests discussed in the text are not present in this case.

we find that the media access sought here would advance First Amendment concerns only to a minimal degree, if at all. On the other hand, we find significant institutional interests supporting the rules at issue here. Furthermore, several reasons lead us to conclude that the per se approach of the current rule is reasonable. It is apparent from the above discussion that the interests relied upon are institutional interests which will exist generally. Also, the Supreme Court has noted that the impact of television coverage on jurors, witnesses, and other trial participants is "so subtle as to defy detection," *Estes v. Texas*, 381 U.S. at 545, 85 S.Ct. 1634. Promulgation of the current rules in a legislative-type manner is more appropriate than a case-by-case approach in light of the difficulty of detecting the adverse impact of media coverage, and in view of the minimal or nonexistent infringement on First Amendment concerns. Finally, judicial efficiency and economy are served by a per se rule.

For the foregoing reasons, we find that *Nixon Communications, Inc., supra,* and *Belo Broadcasting Corp. v. Clark, supra,*[14] provide the controlling authority for this case, and we reject appellants' First Amendment challenge to Rule 53 and Local Rule 20. The matter is not one that should be fixed in constitutional concrete; rather, the issue is one that should be addressed to the appropriate rule-making authority.

## II.  SIXTH AMENDMENT

In his amicus brief, defendant Hastings argues that his Sixth Amendment right to a public trial entitles him to have this trial televised, to the extent that is technologically feasible.[15] Without television coverage, Hastings argues, public understanding of his trial will be incomplete. In Hastings' view, television is necessary to rehabilitate his reputation so that he can return to the bench as an effective judge. This argument has been addressed and rejected elsewhere:

> Nor does the Sixth Amendment require that the trial—or any part of it—be broadcast live or on tape to the public. The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed.

*Nixon v. Warner Communications, Inc.,* 435 U.S. at 610, 98 S.Ct. at 1318. Following *Warner Communications, Inc.,* we reject the Sixth Amendment challenge to Rule 53 and Local Rule 20.[16]

AFFIRMED.

---

**14.** The preceding discussion also makes clear that the recent developments in First Amendment law leave intact the Fifth Circuit's ruling in *Seymour v. United States,* 373 F.2d 629 (5th Cir.1967). In that case, a television news photographer had taken television photographs of a criminal defendant and his attorney in the hallway outside the courtroom where the defendant had been arraigned. The photographer was found guilty of criminal contempt for violating the district court's standing order which prohibited photographing, televising, and broadcasting "in connection with any judicial proceeding on or from the same floor of the building on which the courtrooms are located." 373 F.2d at 630. The Fifth Circuit affirmed, and in so doing upheld the standing order against the First Amendment challenge. 373 F.2d at 631–32.

**15.** Appellants also mention the Sixth Amendment claim. Appellants' Brief at 14. As in *Nixon v. Warner Communications, Inc., supra,* we assume arguendo that appellants have standing to assert defendant Hastings' Sixth Amendment right.

**16.** We note appellants' argument that the ban on use of audiovisual equipment arbitrarily discriminates against radio and television reporters. We disagree. While the ban on televising affects television reporters, the rules also prohibit tape recording and still photography, thus affecting newspaper reporters as well. *See Garrett v. Estelle,* 556 F.2d 1274, 1279 (5th Cir.1977) cert. denied, 438 U.S. 914, 98 S.Ct. 3142, 57 L.Ed.2d 1159 (1978).

We have also considered appellants' other contentions, and find them without merit.