**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alcee L. HASTINGS, Defendant,**

**Post-Newsweek Stations, Inc., et al.,
Intervenors-Appellants.**

No. 82–6137.

United States Court of Appeals,
Eleventh Circuit.

May 2, 1983.

Robert S. Catz, College of Law, Cleveland State Univ., Cleveland, Ohio, Terence J. Anderson, Coral Gables, Fla., for Hastings.

ed States, is punishable as a principal.

**560**

Reid Weingarden, Robert Richter, Jo Ann Farrington, Dept. of Justice, Crim. Div., Washington, D.C., for U.S.

Steel, Hector & Davis, Talbot D'Alemberte, Donald M. Middlebrooks, Thomas R. Julin, Miami, Fla., for Post-Newsweek Stations, Inc., Wometco, Outlet Broadcasting, Miami Herald, Radio-Television News Director Assn., etc.

Erwin G. Krasnow, Senior Vice President and General Counsel, National Association of Broadcasters, Washington, D.C., Sara Rose Mullens, Corporate Counsel, Wometco Enterprises, Inc., Miami, Fla., Stephen E. Nevas, First Amendment Counsel, National Association of Broadcasters, Washington, D.C., for Community Television Foundation of South Florida, Inc.

Stephen T. Maher, Miami, Fla., for American Civil Liberties Union Foundation of Fla., Inc.

Walter Terry Maguire, Washington, D.C., for American Newspaper Publishers Assoc.

## ON PETITION FOR REHEARING EN BANC

(Opinion January 4, 1983, 11th Cir., 1983, 695 F.2d 1278)

Before RONEY, VANCE and ANDERSON, Circuit Judges.

PER CURIAM:

A member of the Court in active service having requested a poll on the reconsideration of this cause en banc, and a majority of the judges in active service not having voted in favor of it, rehearing en banc is DENIED. 695 F.2d 1278.

HATCHETT, Circuit Judge, dissenting:

Pursuant to Eleventh Cir. Internal Operating Procedures, I take this opportunity to voice my objection to the refusal to grant en banc consideration of the absolute ban on electronic audio-visual recording of proceedings in federal courtrooms mandated by Fed.R.Crim.P. 53 and Rule 20 of the Local Rules for the Southern District of Florida. In my view, the institutional interests cited in support of the restriction are, at best, mere commendations for the ideals our judicial system strives to maintain. At worst, they represent pretexts for an abhorrence to change and ignore the advances of modern day technology. Coupled with the defendant's express waiver of any and all objections to a televised trial, the justifications for the status quo appear all the more implausible. In any event, I submit that the issue presented today is ripe for reconsideration by the appropriate rule-making authority and the en banc court.

Preserving courtroom decorum and insuring fairness certainly merit top priority on a list of prerequisites for formal courtroom activities. Experimental programs indicate, however, that both objectives can be accomplished despite the presence of television cameras. Examining "non-scientific" survey responses regarding Florida's pilot program with television coverage of trials, the Florida Supreme Court commented on the lack of disruption by the electronic media:

[P]hysical disturbance was so minimal as not to be an arguable factor. Technological advancements have so reduced size, noise, and light levels of the electronic equipment available that cameras can be employed in courtrooms unobtrusively. The standards adopted by the Court vested in the Chief Judges the means to position electronic media representatives in locations which would be least obtrusive while permitting reasonable access to coverage. Furthermore, the standards with respect to pooling and resolution of media disputes appear to have proved workable during the pilot period. Comments received indicate that while disputes arose from time to time, the burden was properly shifted to media representatives to resolve those disputes without involving the trial judge as arbitrator. In a number of instances, the media, both with and without participation of the court, established protocols to anticipate and deal with problem areas.

A related issue is whether the very presence of electronic media in the courtroom detracts from the decorum of the proceedings. The attitudes of all participants surveyed clearly indicate that there is no such discernible effect.

*In re Petition of Post-Newsweek Stations, Florida, Inc.,* 370 So.2d 764, 775 (Fla.1979) (footnotes omitted). The responses from participants in Florida's program are markedly different from the portrayal of the "carnival-like" atmosphere associated with Billy Sol Estes's televised trial:

> Indeed, at least 12 camera men were engaged in the courtroom throughout the hearing taking motion and still pictures and televising the proceedings. Cables and wires were snaked across the courtroom floor, three microphones were on the judge's bench and others were beamed at the jury box and the counsel table. It is conceded that the activities of the television crews and news photographers led to considerable disruption of the hearings.

*Estes v. Texas,* 381 U.S. 532, 536, 85 S.Ct. 1628, 1629, 14 L.Ed.2d 543 (1965).

With specific guidelines and standards, such as those approved in Florida, physical disruption of courtroom proceedings is indiscernible. Decorum and order are maintained. As recognized in *Chandler v. Florida,* 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981), there is simply "no unimpeachable empirical support for the thesis that the presence of the electronic media, ipso facto, interferes with trial proceedings." 449 U.S. at 576 n. 11, 101 S.Ct. at 810 n. 11.

While the effect of television coverage on trial proceedings may still be a debatable subject as it relates to insuring fairness, the data available appears to controvert allegations of unfavorable psychological effects on jurors, witnesses, and other trial participants. At the very least, there is no empirical data sufficient to confirm that the presence of the broadcast media has an adverse effect on the judicial process. *Chandler,* 449 U.S. 560, 578–79, 101 S.Ct. 802, 811–812. As amici curiae in *Chandler,* the attorney general of Alabama in brief noted that

what data there is "indicates that it is possible to regulate the media so that their presence does not weigh heavily on the defendant." 449 U.S. at 578, 101 S.Ct. at 811. Conceding that "any fair minded person" would be concerned about the possibility that television coverage could impede a fair trial, the Florida Supreme Court reported that

> the assertions are but assumptions unsupported by any evidence. No respondent has been able to point to any instance during the pilot program period where these fears were substantiated. Such evidence as exists would appear to refute the assumptions.... [I]t was the opinion of an overwhelming majority (90–95%) of respondents to the survey of the Florida Conference of Circuit Judges that jurors, witnesses, and lawyers were not affected in the performance of their sworn duty in the courtroom.... With particular reference to the charge of an inflated appearance of newsworthiness created by the presence of electronic media in the courtroom, it must be recognized that newsworthy trials are newsworthy trials, and that they will be extensively covered by the media both within and without the courtroom whether Canon 3 A(7) is modified or not. Consequently, if it is deemed to be to the public advantage to permit electronic media coverage in the courtroom, it seems inappropriate to be dissuaded by honestly perceived but unsubstantiated concerns as to adverse psychological effects on participants.

*In re Petition of Post-Newsweek Stations, Florida, Inc.,* 370 So.2d at 775–76.

When suitably circumscribed by appropriate and detailed standards, the public interests which favor electronic media coverage far outweigh the "honestly perceived but unsubstantiated concerns" over a possible lessening of courtroom decorum and fairness. As Justice Harlan noted in concurrence in *Estes v. Texas,* "[t]he day may come when television will have become so commonplace an affair in the daily life of the average person as to dissipate all rea-

**562**

sonable likelihood that its use in courtrooms may disparage the judicial process." *Estes,* 381 U.S. at 595, 85 S.Ct. at 1666 (Harlan, J., concurring). In my opinion, that day has arrived.

RONEY, Circuit Judge, specially concurring:

Although I agree with Judge Hatchett, without prejudging the outcome, that the camera in a federal courtroom issue is ripe for reconsideration by the appropriate rule-making authority, I find no base in the law or in the Constitution that would permit either reversal or modification of the district court's order in this case by this Court. Consequently, I concur in the denial of the request for rehearing en banc.