J-S19035-24

2024 PA Super 310

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOSEPH JOHN LESCHINSKIE, JR. :
:
Appellant : No. 825 MDA 2023

Appeal from the Judgment of Sentence Entered April 18, 2023
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000213-2019

BEFORE:   DUBOW, J., BECK, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED: DECEMBER 23, 2024**

Appellant, Joseph John Leschinskie, Jr., appeals from his judgment of sentence of one to three months' incarceration imposed after he was convicted by a jury of Unlawful Use of an Audio or Video Device in Court.[1]  For the reasons set forth below, we affirm.

On January 15, 2019, Appellant was charged with Unlawful Use of an Audio or Video Device in Court, Obstructing the Administration of Law or Other Government Function, and Disorderly Conduct for an incident in the Northumberland County Courthouse on January 4, 2019, in which Appellant

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5103.1(a).

recorded testimony at a summary trial on his cell phone. A one-day jury trial of these charges was held on March 15, 2023.[2]

At the jury selection on March 13, 2023, two days before the trial, a number of prospective jurors told the court that they had heard about the case or Appellant in the newspaper or on social media. N.T. Jury Selection at 14-16, 20-21, 26, 43-45. After jury selection was complete, the trial court announced that it was issuing a gag order prohibiting the Commonwealth, the Assistant District Attorney trying the case, the District Attorney's Office, Appellant, and Appellant's counsel from speaking to the media, issuing any statements, or posting on social media about the case, and the Commonwealth and Appellant consented to the issuance of such an order. *Id.* at 59-62. The trial court issued a written gag order later that day which ordered that "the parties to this proceeding shall not make any public statements or comments in any form, including but not limited to oral, written, video, electronically, including any form of social media, in any way related to this case." Trial Court Order, 3/13/23.

Between the completion of jury selection and the start of Appellant's trial, an article appeared in the local newspaper, the Daily Item, reporting a statement by the District Attorney concerning Appellant's candidacy for Shamokin City Council that asserted that Appellant was prohibited from

---

[2] An earlier jury trial in June 2022 resulted in a mistrial for reasons that are not at issue in this appeal.

holding office because he had felony drug convictions. N.T. Trial at 5-6; Defense Ex. 1. On the morning of March 15, 2023, before trial started, Appellant moved for a mistrial with prejudice on the ground that the District Attorney's statement that was quoted in the news story violated the trial court's gag order. N.T. Trial at 5-7; Appellant's 3/15/23 Motion for Mistrial. The trial court held an immediate hearing on this motion at which the court reporter who transcribed the jury selection and the individual who sent out the District Attorney's communications to the media testified and copies of the newspaper article and the District Attorney's communications were put in evidence. N.T. Trial at 13-39; Defendant's Exhibits 1-4. Following this hearing, the trial court denied the motion for a mistrial on the ground that there was no violation of the gag order because the District Attorney's statements were made before any gag order was issued. N.T. Trial at 37-39. Appellant's trial then commenced. When the jurors were brought in, the trial court asked the jurors before the trial proceeded whether any of them had read, seen, or heard anything concerning the case or concerning Appellant since they were selected as jurors, and no juror responded that he or she had read, seen, or heard anything. *Id.* at 39-40.

Four witnesses testified for the Commonwealth at the trial: the Pennsylvania state trooper who had testified at the January 4, 2019 summary trial, which was Appellant's appeal of a traffic citation for speeding, a deputy sheriff and a police officer who witnessed the events that occurred in the

hallway outside the courtroom where the summary trial had been held, and a detective to whom Appellant complained about the incident. The trooper testified that he was the officer who conducted the traffic stop at issue and testified at the summary trial and that when he and Appellant left the courtroom after the summary trial, Appellant had his cell phone in his hand. N.T. Trial at 72-76, 87-88. The trooper testified that he then heard Appellant say "the Superior Court is going to like hearing this" and heard a recording of his voice coming from Appellant's cell phone. *Id.* at 76-77, 83-88.

The deputy sheriff testified that he was in the courtroom during the summary trial and that the trooper testified at the summary trial. N.T. Trial at 90-91. The deputy sheriff testified that as he walked past Appellant after leaving the courtroom, he heard the trooper's voice coming from Appellant's cell phone and heard Appellant say "they are going to love hearing this at the appeals court." *Id.* at 91-92, 97-98. The police officer likewise testified that as she passed Appellant in the hallway outside the courtroom, she heard Appellant saying that the appeals court would love to hear this or similar words and heard a recording of the trooper's voice. *Id.* at 105, 108-09.

The detective testified that Appellant came to his office on January 4, 2019 to complain that a sheriff had assaulted and injured him in this incident. N.T. Trial at 56-57. The detective testified that when he asked Appellant about what happened, Appellant said that the sheriff accused him of making a recording. *Id.* at 57. The detective testified that he then asked Appellant if

he made a recording and that Appellant answered yes. *Id.* at 57, 66. The detective also testified that on January 4, 2019, there were signs at the entrances to the courtroom stating that all electronic devices must be turned off before entering the courtroom. *Id.* at 60, 71.

At the close of the Commonwealth's case, the trial court granted Appellant's motion for judgment of acquittal on the Obstructing the Administration of Law or Other Government Function and Disorderly Conduct charges. N.T. Trial at 112. Appellant did not testify and presented no witnesses. Following closing arguments and the court's charge, the jury returned a verdict finding Appellant guilty of Unlawful Use of an Audio or Video Device in Court. *Id.* at 128-29. On April 18, 2023, the trial court imposed a sentence of one to three months' incarceration to be served consecutive to the sentence imposed for Appellant's terroristic threats conviction in another case, CP-49-CR-0000116-2021.[3] N.T. Sentencing at 12-13; Sentencing Order.

Appellant filed a timely post-sentence motion in which he asserted claims that the statute under which he was convicted was unconstitutional, that the evidence was insufficient to support his conviction, that his conviction was against the weight of the evidence, and that the trial court erred in denying his March 15, 2023 motion for a mistrial. On May 31, 2023, the trial

---

[3] That terroristic threats conviction is the subject of other appeals before this Court.

- 5 -

court denied Appellant's post-sentence motion. Trial Court Order, 5/31/23. This timely appeal followed.

Appellant presents the following four issues for our review in this appeal:

I. Whether the Appellant's conviction for Unlawful Use of An Audio or Video Device in Court is unconstitutional?

II. Whether the evidence was insufficient to sustain a conviction for Unlawful Use of An Audio or Video Device in Court?

III. Whether the Defendant's conviction for Unlawful Use of An Audio or Video Device in Court was against the weight of the evidence?

IV. Whether the trial court erred/abused its discretion in denying the Defendant's request for a mistrial with prejudice?

Appellant's Brief at 10 (suggested answers omitted). We conclude that none of these issues has merit.

Section 5103.1 of the Crimes Code defines the offense of Unlawful Use of an Audio or Video Device in Court as follows:

A person commits [this] offense if the person in any manner and for any purpose uses or operates a device to capture, record, transmit or broadcast a photograph, video, motion picture or audio of a proceeding or person within a judicial facility or in an area adjacent to or immediately surrounding a judicial facility without the approval of the court or presiding judicial officer or except as provided by rules of court.

18 Pa.C.S. § 5103.1(a). Section 5103.1 defines "judicial facility" as "a courtroom, hearing room or judicial chambers used by the court to conduct trials or hearings or any other court-related business or any other room made available to interview witnesses." 18 Pa.C.S. § 5103.1(c).

In his first issue, Appellant argues that this statute violates the First Amendment to the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution. Because a challenge to the constitutionality of a statute is a question of law, our standard of review of this issue is *de novo*, and our scope of review is plenary. **Commonwealth v. Papp**, 305 A.3d 62, 70 (Pa. Super. 2023).

Appellant asserts that private citizens have a constitutional right under the First Amendment and Article I, Section 7 to make their own audio or video recordings of court proceedings and that because Section 5103.1 bars such recordings it is unconstitutional. We do not agree. Although there is no case law specifically addressing Section 5103.1, the United States Supreme Court, this Court, and numerous other courts throughout the country have held that prohibiting audio and video recording of court proceedings does not violate the First Amendment.

In **Nixon v. Warner Communications, Inc.**, 435 U.S. 589 (1978), in addressing claims for release of tape recordings in the custody of a court, the United States Supreme Court specifically held that there is no constitutional right to record live witness testimony in a trial. **Id.** at 610. This Court, in **Commonwealth v. Davis**, 635 A.2d 1062 (Pa. Super. 1993), addressed and rejected a First Amendment challenge to a judicial order prohibiting videotaping of court proceedings, holding that prohibiting such recording was a reasonable time, place, and manner restriction. **Id.** at 1065-70. The federal

courts have also repeatedly held that prohibitions on recording court proceedings do not violate the First Amendment. ***E.g.***, ***Conway v. United States***, 852 F.2d 187, 188 (6th Cir. 1988); ***United States v. Edwards***, 785 F.2d 1293, 1285-96 (5th Cir. 1986); ***United States v. Yonkers Board of Education***, 747 F.2d 111, 112-14 (2d Cir. 1984); ***United States v. Hastings***, 695 F.2d 1278, 1282-84 (11th Cir. 1983); ***Shavlik v. Snohomish County Superior Court***, 2019 WL 2616631, at *7 (W.D. Wash. June 26, 2019); ***McKay v. Federspeil***, 22 F.Supp.3d 731, 734-36 (E.D. Mich. 2014), ***aff'd on other ground***, ***McKay v. Federspiel***, 823 F.3d 862 (6th Cir. 2016); ***United States v. Moussaoui***, 205 F.R.D. 183, 184-86 (E.D. Va. 2002).

Nothing in Section 5103.1 or the nature of Appellant's recording makes these precedents inapplicable. Section 5103.1 is content neutral, as it prohibits recording "for any purpose." 18 Pa.C.S. § 5103.1(a). Although no issues of privacy of jurors or harm to the defendant were present here, as the proceeding was Appellant's own trial and it was a non-jury summary trial, that does not make the reasons for prohibiting recording irrelevant. The portion of the proceeding that Appellant recorded was a witness's testimony, not Appellant's own actions or testimony. The courts, including this Court in ***Davis***, have specifically recognized the potential impact on witnesses as an important reason for prohibiting recording. ***Davis***, 635 A.2d at 1068; ***Yonkers Board of Education***, 747 F.2d at 114; ***Hastings***, 695 F.2d at 1283-84.

Appellant does not cite any precedent that justifies recognizing a constitutional right to record court proceedings. Only three of the cases that he cites, **Whiteland Woods, L.P. v. Township of West Whiteland**, 193 F.3d 177 (3d Cir. 1999), **Fields v. City of Philadelphia**, 862 F.3d 353 (3d Cir. 2017), and a New York state trial court decision, **People v. Boss**, 701 N.Y.S.2d 891 (N.Y. Sup. 2000), involve any claim of a constitutional right to record others. None of these cases provides persuasive authority to disregard the overwhelming body of precedent rejecting a constitutional right to record judicial proceedings.

Neither **Whiteland Woods** nor **Fields** recognized any constitutional right to record courtroom proceedings. In **Whiteland Woods**, the United States Court of Appeals for the Third Circuit held that there was no First Amendment right to videotape a township planning commission, citing with approval and relying on cases upholding the constitutionality of prohibitions on recording judicial proceedings. 193 F.3d at 180-84. In **Fields**, the Third Circuit recognized a First Amendment right to record police officers conducting official police activity in public places. 862 F.3d at 359-60. **Fields**, however, not only did not involve recording of a court proceeding, but also made clear that it was not holding that there is a First Amendment right to record in all places or circumstances, stating that "[w]e do not say that all recording is protected" and citing **Whiteland Woods**. **Id.** at 360.

The New York trial court in **Boss** recognized a right to televise court proceedings under the First Amendment. 701 N.Y.S.2d at 893-95. That ruling, however, is inconsistent with later appellate decisions in the same state which hold that no such constitutional right exists. **Courtroom Television Network LLC v. State**, 833 N.E.2d 1197, 1200–03 (N.Y. 2005); **Santiago v. Bristol**, 709 N.Y.S.2d 724, 726 (N.Y. App.Div. 2000). It therefore is not even valid precedent in New York, let alone a basis to disregard the weight of precedent holding that there is no First Amendment right to record judicial proceedings, including decisions of this Court and the United States Supreme Court.

Appellant argues that even if there is no First Amendment right to record court proceedings, such a right should be recognized under Article I, Section 7 of our Constitution. That contention is without merit. Article I, Section 7 does provide broader protection than the First Amendment from some content-based restrictions on speech. **Oberholzer v. Galapo**, 322 A.3d 153, 176 (Pa. 2024); **Pap's A.M. v. City of Erie**, 812 A.2d 591, 605-13 (Pa. 2002). Article I, Section 7, however, does not provide broader protection than the First Amendment for all claims alleging an unconstitutional restriction on speech. **Oberholzer**, 322 A.3d at 176.

Article I, Section 7 is co-extensive with the First Amendment where content-neutral restrictions related to judicial proceedings are challenged. **S.B. v. S.S.**, 243 A.3d 90, 112-13 (Pa. 2020) (Article I, Section 7 is co-

extensive with First Amendment with respect to constitutionality of gag order in child custody case); *see also Oberholzer*, 322 A.3d at 176 (citing the upholding of a ban on taking of pictures in courthouse in *In re Mack*, 126 A.2d 679 (Pa. 1956), as an example of where Article I, Section 7 is co-extensive with the First Amendment).  Because Section 5103.1 of the Crimes Code is a content-neutral regulation of behavior in court proceedings, Article I, Section 7 does not provide any broader protection than the First Amendment.  Moreover, there is no basis to conclude that our Supreme Court would view Article I, Section 7 as creating a right to record court proceedings, as it has promulgated court rules, Rule 112 of the Rules of Criminal Procedure and Rule 1910 of the Rules of Judicial Administration, that specifically prohibit the recording of such proceedings.  Pa.R.Crim.P. 112(A), (C); Pa.R.J.A. 1910.

Appellant also contends that even if recording of testimony can be prohibited, Section 5103.1 is unconstitutionally overbroad because it prohibits photographing and recording of people in a courtroom when court is not in session, recording in areas "adjacent to or immediately surrounding a judicial facility," and photographing of ceremonies in courtrooms, such as weddings and adoptions.  We do not agree.  A statute can be held unconstitutional due to overbreadth only if it restricts a substantial amount of constitutionally protected conduct in comparison to the conduct that it permissibly prohibits. *Commonwealth v. Davidson*, 938 A.2d 198, 208 (Pa. 2007); *Commonwealth v. Hendrickson*, 724 A.2d 315, 317-18 (Pa. 1999).  In

- 11 -

addition, an overbreadth challenge is weaker where the statute prohibits conduct rather than pure speech. **Hendrickson**, 724 A.2d at 318; **Papp**, 305 A.3d at 74.

Section 5103.1 prohibits conduct, "us[ing] or operat[ing] a device to capture, record, transmit or broadcast," not pure speech, and does not prohibit a substantial amount of protected activity in comparison to the conduct that it legitimately bars. The fact that it applies regardless of whether court is in session does not make its restrictions overbroad, as the need to protect witnesses exists when they are at court before and after the court is in session. Although the statute applies to areas "adjacent to or immediately surrounding a judicial facility," that does not restrict a substantial amount of conduct outside the court proceeding, as Section 5103.1 narrowly defines "judicial facility" as the courtroom itself, a hearing room, a judicial chambers, and a room where witnesses are being interviewed, not the entire building that houses the court. 18 Pa.C.S. § 5103.1(c). The prohibition on recording is thus limited to the rooms where judicial proceedings occur or witnesses are located and to persons going to and coming from such rooms.

Appellant's remaining overbreadth claim, that Section 5103.1 criminalizes the recording of weddings and adoptions is simply inaccurate. Section 5103.1 only prohibits recording "without the approval of the court or presiding judicial officer or except as provided by rules of court." 18 Pa.C.S. § 5103.1(a). Both the Rules of Judicial Administration and the Rules of

Criminal Procedure specifically permit judges to authorize the recording of such ceremonial proceedings. Pa.R.J.A. 1910(B)(2); Pa.R.Crim.P. 112(B).

Because prohibiting the recording of court proceedings does not violate the First Amendment or Article I, Section 7 of our Constitution and Section 5103.1 does not significantly restrict activities outside its legitimate reach, Appellant's constitutional challenge to his conviction fails.

In his second issue, Appellate argues that that the evidence admitted at trial was insufficient to support his conviction. The standard of review applicable to this issue is well established:

> When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Papp*, 305 A.3d at 81 (quoting *Commonwealth v. Collins*, 286 A.3d 767 (Pa. Super. 2022)) (brackets omitted). Appellant contends that the evidence here was insufficient because it allegedly did not prove two elements of the offense of Unlawful Use of an Audio or Video Device in Court, that he recorded a court proceeding and that he did not have approval of the court to record the proceeding.

Contrary to Appellant's contentions, the evidence was sufficient to prove both of these elements. The Commonwealth introduced testimony that

immediately upon leaving a courtroom where a summary trial of Appellant's traffic citation had just been held, Appellant played the voice of a person who had testified at the summary trial on his cell phone and that while the witness's voice played on his phone, Appellant said that an appellate court would "like" or "love" hearing that recording. N.T. Trial at 72-77, 83-88, 90-92, 97-98, 105, 108-09. That evidence alone is sufficient for the jury to infer that Appellant recorded the witness's testimony in the courtroom. In addition, the Commonwealth introduced testimony that Appellant admitted later that day that he had recorded in the courtroom. *Id.* at 57.

The evidence was likewise sufficient to for the jury find that Appellant did not have approval of the court to record the proceedings. The trooper, who was present at the summary trial as a witness, testified that no permission to record was announced in the courtroom. N.T. Trial at 73. The jury could infer that no one privately gave Appellant permission to record from the testimony because his behavior was inconsistent with a belief that he was allowed to record the proceeding. The Commonwealth's evidence showed that Appellant tried to conceal the fact that his phone had a recording of the summary trial and kept trying to do things to his phone after the deputy sheriff confronted him and told him that he had to return to the courtroom because he had recorded the proceeding. *Id.* at 76-77, 92-93, 101-02. In addition, in response to the deputy sheriff's question as to whether he had recorded the proceeding, Appellant first contended that that he did not record it, then

claimed that he did not know that recording was prohibited, and never claimed that he had been given permission to record. *Id.* at 92, 105-06, 109.

Appellant's third issue, the claim that the verdict was against the weight of the evidence, likewise fails. A new trial may be granted on the ground that the verdict is against the weight of the evidence only where the verdict was so contrary to the evidence that it shocks the trial court's sense of justice. *Commonwealth v. Clemons*, 200 A.3d 441, 463 (Pa. 2019); *Commonwealth v. James*, 268 A.3d 461, 468 (Pa. Super. 2021). Our review of the denial of a motion for a new trial based on weight of the evidence is limited. We review whether the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence, not whether the verdict, in this Court's opinion, was against the weight of the evidence. *Clemons*, 200 A.3d at 463-64; *Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge …. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa. Super. 2014) (quoting *Commonwealth v. Clay*, 64 A.3d 1049 (Pa. 2013)) (brackets omitted).

The trial court found that the verdict did not shock its sense of justice. Trial Court Rule 1925(a) Statement; N.T., 5/30/23, at 26-27, 29. That was not an abuse of discretion, as the testimony detailed above was sufficient for

the jury to conclude that Appellant recorded the trooper's testimony at the summary trial on his cell phone without permission from the court and there was no evidence contradicting that testimony or negating its credibility. Appellant argues that the verdict was against the weight of the evidence because the recording that Appellant made was not introduced in evidence and the witnesses could not say that they recognized specific testimony from the summary trial in the recording of the trooper that that they heard on Appellant's phone. Appellant's Brief at 14, 21-22. That argument is without merit. Neither of these facts makes the verdict contrary to the evidence, as the witnesses' testimony that they heard the trooper's voice on Appellant's phone showed that he had recorded the trooper, there was substantial circumstantial evidence from the timing of the playing of the recording and Appellant's statement of intent to use it in an appeal from which it could reasonably be concluded that the recording was of testimony in the summary trial, and there was evidence that Appellant admitted recording the proceeding.

In his final issue, Appellant argues the trial court erred in denying his motion for a mistrial because the District Attorney made a statement to the press that violated the trial court's gag order and asserts that the District Attorney's statement prejudiced him because it referred to his prior criminal record. This issue fails because the contentions on which it is based are unsupported, and indeed contradicted, by the record.

The record unequivocally shows that no gag order was in effect at the time that the District Attorney made his statements to the press. The court stamp on the written gag order shows that it was issued at 3:21 p.m. on March 13, 2023. Trial Court Order, 3/13/23. Although the trial court made clear before the written order that it would be issuing a gag order, the transcript of the jury selection shows that this expression of intent to issue a gag order occurred after 12:49 p.m. on March 13, 2023. N.T. Jury Selection at 59-62. The documents introduced in evidence at the trial court's hearing on the motion for a mistrial demonstrate that the District Attorney's communications with the press occurred at 8:41 a.m. on March 13, 2023, and at 10:58 a.m. on March 13, 2023, hours before anyone in the District Attorney's Office had any reason to believe that any gag order had been or would be issued. N.T. Trial at 22-35; Defendant's Exhibits 2, 4. Moreover, the District Attorney's communications do not show a motive to influence this case, as they were in response to Appellant's recent filing of his candidacy for political office and commented solely on his candidacy and inability to hold office, not on this trial or criminal case. Defendant's Exhibits 2-4.

In addition, there is no evidence that the District Attorney's statements caused Appellant prejudice, as there is nothing in the record indicating that any of the jurors read or heard about those statements. After the news story appeared, the trial court specifically asked the jurors if they had "read, seen, heard, observed anything relating to this case since you were selected as

jurors" or "read any articles, seen any videos, anything relating to [Appellant] since Jury Selection." N.T. Trial at 40. No juror responded that he or she had seen or heard anything about the case or about Appellant. *Id.* Given the absence of any violation of the trial court's order and the absence of any prejudice to Appellant, the trial court's denial of the motion for a mistrial was entirely proper.

For the foregoing reasons, we conclude that none of Appellant's issues merits relief. We accordingly affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.


_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/23/2024