In the Matter of HEARST CORPORATION et al., Petitioners, v FRANCIS J. VOGT, as Acting Supreme Court Justice, et al., Respondents.

Third Department, June 19, 1978

---

## APPEARANCES OF COUNSEL

*O'Connell & Aronowitz, P. C. (Peter Danziger* of counsel), for petitioners.

*Maxwell B. Spoont, Acting Deputy Attorney-General (James H. Sweeney* of counsel), for Statewide Organized Crime Task Force, respondent.

*Louis J. Lefkowitz, Attorney-General (Robert D. McDougall* of counsel), for Francis J. Vogt, respondent.

*William Gray* for Mae Baker, respondent.

**OPINION OF THE COURT**

HERLIHY, J.

The case out of which the present proceeding arises is the trial of Mae Baker. The *Baker* action resulted from an investigation by the Statewide Organized Crime Task Force into alleged prostitution and alleged police corruption in and about the City of Albany. The exhibits sought by the petitioners were photographs that were received in evidence. These exhibits were numbered 1 to 31 and were taken in the proximity of 52 Division Street, Albany, an alleged house of prostitution.

The application to the Trial Judge for permission to inspect and copy was denied on the ground that the pretrial publicity might be prejudicial to the rights of other defendants whose trials are still pending and, in particular, might prevent the defendants from receiving a fair trial because of prejudicial pretrial publicity.

■ The petitioners contend that the facts herein constitute a prior restraint on freedom of the press. It is certain, however, that the facts herein do not represent an attempt to suppress facts which are already within the knowledge and control of the press. The existence of the photographs and such views thereof as could be seen from the spectator or public area of the courtroom by the public generally were not subject to any restriction. The full testimony identifying and describing the photographs was available to the petitioners as well as to the public and, accordingly, there was no restriction in that respect. We find no attempt herein to "gag" the press *(Nebraska Press Assn. v Stuart,* 427 US 539) or to otherwise impose any prior restraint. As in the recent case of *Nixon v Warner Communications* (435 US 589), the present case involves the news gathering process in which it is well established that there is no unrestrained right to gather information *(Zemel v Rusk,* 381 US 1).

■ We turn first to the issue of the right to inspect the exhibits. In our opinion Special Term erred in denying such

inspection. The reasons seem obvious. First, the exhibits were marked and received in evidence and thus became part of the official record. Second, the investigation by the Organized Crime Task Force identified the various exhibits as showing 18 males and 1 female either entering or leaving the premises located at 52 Division Street, Albany, and identified one exhibit as showing a certain numbered automobile of the Albany Police Department.

Further, two male witnesses who testified identified themselves as subjects in some of the exhibits. Under such circumstances, the inspection of the exhibits cannot be prejudicial to any pending trials, unless the media creates an issue of possible prejudice. If such an eventuality should occur, further consideration of the matter would be necessary. At this juncture, however, it should be distinctly understood that this court is not passing on such issue.

As to the further issue of copying the exhibits, we look at this matter somewhat differently and conclude that Special Term correctly denied the petitioners the right to copy the exhibits. As the Court of Appeals observed in *Matter of Gannett Co. v De Pasquale* (43 NY2d 370, 377) "where a fair trial may hang suspended in the balances, the Constitution should not be considered as a substitute for a sunshine law (see Public Officers Law, §§ 85-89, as amd by L 1977, ch 933; Freedom of Information Act, US Code, tit 5, § 552)."

It is our opinion that with trials still pending in which the said exhibits might well become part thereof, such copying by the media for showing in its publications would be not so much prejudicial to the personal or private rights of the pending defendants, as it might be the instrument that would prevent the defendants from having a fair trial.

While admittedly *Nixon v Warner Communications* (435 US 589, 609; *supra)* is not necessarily controlling, there is a similarity at least in part between the actions, particularly where the court made the following observation: "The contents of the tapes were given wide publicity by all elements of the media. There is no question of a truncated flow of information to the public. Thus, the issue presented in this case is not whether the press must be permitted access to public information to which the public generally is guaranteed access, but whether these *copies* of the White House tapes—to which the public has never had *physical* access—must be made available for copying."

It is conceded, of course, in the present proceeding that the exhibits have been exposed to the public more than the tapes in *Nixon,* but by the same standard the media has had "a truncated flow of information to the public" as to the contents of the exhibits sought to be copied.

On balance, Special Term properly exercised its discretion in denying copying of the exhibits at this time. It may well be that at some future date the right to copy will become available to the media, but we need not pass on that issue now since the trial court, as a matter of discretion, is the proper forum to initially determine such issue *(People v Darden,* 34 NY2d 177, 181-182).

The petition should be granted, without costs, to the extent of permitting an inspection of Exhibits 1 to 31, and in all other respects the petition should be denied.

KANE, J. (concurring in part and dissenting in part). I agree with the majority's conclusion that while the action taken by the trial court does not present the constitutional issue of a prior restraint on the press, its order constituted an interference with petitioner's fundamental common-law right of access to judicial records. This right of access, which makes the democratic spirit of an open judicial proceeding viable, can be circumscribed only after careful scrutiny and weighing of the counterbalancing interests offered in opposition to it. The history, importance, and limitations on this right of access have recently been discussed at length by the Supreme Court of the United States (see *Nixon v Warner Communications,* 435 US 589) and, contrary to the majority view, I believe that its pronouncements should produce a different result. In my opinion, on the facts presented, a fair balance between the potentially unfavorable impact caused by media use of the photographs in issue as to defendants yet untried, against this common-law right to public access, should result in a conclusion that the denial of access to and publication of the 31 photographs is not justified. The mere risk of possible prejudice in future trials does not warrant an infringement on the right to inspect and copy exhibits already admitted into evidence (see *United States v Mitchell,* 551 F2d 1252, revd on other grounds *sub nom Nixon v Warner Communications,* 435 US 589, *supra).* Moreover, I cannot assume that petitioners would act in a manner incompatible with their professional

responsibilities in using the materials sought. Accordingly, I would grant the application in its entirety.

GREENBLOTT, J P., SWEENEY and LARKIN, JJ., concur with HERLIHY, J.; KANE, J., concurs in part and dissents in part in a separate opinion.

Petition granted, without costs, to the extent of permitting an inspection of Exhibits 1 to 31, and in all other respects petition denied.