KPNX BROADCASTING CO. ET AL. *v.* ARIZONA
SUPERIOR COURT ET AL.

No. A–543.    Decided December 23, 1982

JUSTICE REHNQUIST, Circuit Justice.

Applicants, KPNX Broadcasting Co. and several reporters and courtroom sketch artists, ask that I stay two orders issued by the Superior Court of Maricopa County, Ariz. Applicants are reporting on a murder case presently being tried before one of the judges of that court in Phoenix. This is the third trial to arise out of the same murder; three accomplices have been convicted in two previous jury trials. The crime allegedly involves several conspiracies and other connections with organized crime, and has generated extensive publicity. Some members of the jury venire expressed a fear for personal and family safety if they were selected as jurors. The trial court responded that it would do whatever was possible to prevent their pictures from being displayed. Early in the course of this trial, a magazine in Phoenix published an article about one of the prosecuting attorneys.

The trial has been open to the public and press at all times. There has not been any restriction on the reporting of the proceedings in open court. The trial court has, however, entered two orders that "restrict" the press from covering the trial as it would like to do.

First, the trial court ordered court personnel, counsel, witnesses, and jurors not to speak directly with the press. The court appointed a court employee as "Liaison with the media" to provide a "unified and singular source for the media concerning these proceedings."

Second, on November 30 the trial judge observed two of the applicants, who are television sketch artists, drawing the jurors. The court ordered that all drawings of jurors that are to be broadcast on television be reviewed by the court before being broadcast.

After the second order was issued, an organization calling itself the First Amendment Coalition sought a conference with the trial judge to object to these orders. Nothing was resolved at this conference, and the trial was then recessed until December 6. On that day, the First Amendment Coalition filed a petition for special action with the Supreme Court of Arizona, asking that court to vacate the two orders and enjoin the trial judge from issuing any similar orders. The Arizona Supreme Court dismissed this petition on December 8 on the ground that the First Amendment Coalition lacked standing and the petitioners had failed to join as parties the defendants in the murder trial.

On December 12, the present applicants filed a similar petition for special action and an application for a stay of the two orders. The following day, the Arizona Supreme Court denied the application for a stay and set the petition for oral argument for hearing on January 18. On December 14, the trial court held a hearing on applicants' standing to challenge the orders in that court. The trial court decided that applicants have standing, and set a hearing on their application to vacate the orders on December 17. Applicants also filed this application on December 17.

On December 20, the trial court entered an order explaining its earlier orders and declining to vacate them. With respect to the order that participants in the case not communicate with the press, the trial court stated that it had eval-

uated the press' First Amendment rights against the defendants' Sixth Amendment rights to a fair trial. It found that the least restrictive course of conduct that would protect the defendants' rights was to restrict the participants' outside contact with the press and appoint a court official to answer questions about the proceedings. As to the sketch order, the court held that the sketches of jurors by television artists were used in lieu of actual video recording of the jurors during the proceedings. It held that there is no constitutional right to broadcast pictures of the jurors, relying on *Chandler* v. *Florida*, 449 U. S. 560 (1981), and *Nixon* v. *Warner Communications, Inc.*, 435 U. S. 589 (1978).

Applicants contend that the order that trial participants not communicate with the press conflicts with *Nebraska Press Assn.* v. *Stuart*, 427 U. S. 539 (1976), and with several decisions from the Federal Courts of Appeals. Applicants contend there was no showing that the order was necessary to protect the defendants' right to a fair trial. Respondents contend that this order is supportable on the merits because the trial court has struck a proper balance between the defendants' right to a fair trial and the press' First Amendment rights. They point out that nothing in the order limits the press' right to attend the trial and report anything it observes.

Applicants also contend that the order prohibiting broadcast of sketches of the jurors is an unconstitutional prior restraint. They contend the decision conflicts with *Stuart, supra,* and with the decisions of several State Supreme Courts. Respondents contend that this order is based on an interpretation of the Arizona Supreme Court's guideline concerning television coverage of trials. Since the order applies only to television, respondents contend that it is correct under *Chandler* v. *Florida, supra.*

These facts seem to place the issues in the general area of constitutional law that is covered by our decisions in cases

such as *Globe Newspaper Co.* v. *Superior Court for County of Norfolk*, 457 U. S. 596 (1982); *Richmond Newspapers, Inc.* v. *Virginia*, 448 U. S. 555 (1980); *Gannett Co.* v. *DePasquale*, 443 U. S. 368 (1979); and *Nebraska Press Assn.* v. *Stuart, supra.* It does not appear that stays were sought from this Court in any but the last of these four cases; and the present case is in a posture very similar to that of *Stuart, supra,* when that case was before JUSTICE BLACKMUN on an application for stay. 423 U. S. 1319 (1975); 423 U. S. 1327 (1975). The applicants there, like the applicants in this case, were seeking a stay of a state trial court order pending review of that order in the State Supreme Court. As JUSTICE BLACKMUN pointed out, "[i]t is highly desirable, of course, that the issue, concerning, as it does, an order by a . . . state court, should be decided in the first instance by the Supreme Court" of the State. 423 U. S., at 1325; 423 U. S., at 1328. There, as here, the State Supreme Court had given some indication that it would not rule on the case for several weeks.

In these circumstances, JUSTICE BLACKMUN noted that where "a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment." *Id.*, at 1329. JUSTICE BLACKMUN thought that parts of the order at issue in *Stuart* created irreparable injuries that required him to act before the State Supreme Court. The applicants in that case were prohibited from "reporting of the details of the crimes, of the identities of the victims, [and] of the testimony of the pathologist at the preliminary hearing." *Id.*, at 1331. At the same time, JUSTICE BLACKMUN declined to stay other parts of the order, including a complete prohibition on reporting that the accused had confessed, *id.*, at 1332–1333, a ban on photography in the courthouse, and restrictions on trial participants' contacts with the media, *id.*, at 1334. JUSTICE BLACKMUN thought it proper to stay only "the most obvious features that require resolution immediately and without one moment's further delay." *Ibid.*

Given the procedural posture of this case, it would seem that in order for a stay to be granted before the case is heard by the highest court of the State, there should be a risk of irreparable injury together with a demonstrable departure on the part of the trial court from the law laid down in our cases. I simply do not find those elements to be present here. The orders at issue in this case do not prohibit the reporting of any facts on the public record. The trial has never been closed, and all the proceedings may be reported and commented upon. With respect to the court's order barring communication between trial participants and the press, it seems to me that the following language from *Sheppard* v. *Maxwell*, 384 U. S. 333 (1966), quoted with approval in *Stuart, supra*, at 553–554, goes far towards sustaining the action of the trial court:

> "Due process requires that the accused receive a trial by an impartial jury free from outside influences. . . . The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor the enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures." 384 U. S., at 362–363.

So far as communication between the trial participants and the press during actual sessions of the court in the courtroom and its immediate environs, I do not have the slightest doubt that a trial judge may insist that the only performance which goes on in the courtroom is the trial of the case at hand. The fact that media coverage has transformed events such as professional sports contests into a framework designed to accommodate that coverage does not mean that the First Amendment requires criminal trials to undergo the same

transformation. The mere potential for confusion if unregulated communication between trial participants and the press at a heavily covered trial were permitted is enough to warrant a measure such as the trial judge took in this case. Continuation of the proscription against communication to hours and places where the court is not in session appears to me to be warranted under the above-quoted language from *Sheppard, supra.*

I find the requirement of clearance with the trial judge before sketches of the jurors may be shown on television the more troubling of the two orders issued by the trial judge. The judge limited the order to sketches drawn for television showing, and did not include within it sketches to be reproduced in newspapers. He apparently made this distinction because *Chandler* v. *Florida,* 449 U. S. 560 (1981), suggests a greater latitude in trial courts for regulating television coverage of a trial than for regulation of coverage by the press. For this purpose I am somewhat at a loss to know why the print media and the electronic media should be treated differently, since whatever potential for disruption or distortion may exist would appear to be the same whether the sketches are ultimately reprinted in newspapers or shown on television.

But I cannot accept applicants' conclusion, drawn from this distinction, that the limitation of the regulation of sketches indicates that the trial judge did not regard it as essential; I think he regarded it as essential, and probably would have extended it to all sketches if he thought that the First Amendment permitted him to do it. Likewise, the requirement of previous clearance of the sketches smacks, at least in the abstract, of the notion of "prior restraint," which has been roundly condemned in a long line of our cases beginning with *Near* v. *Minnesota ex rel. Olson,* 283 U. S. 697 (1931). I think that in all probability the trial judge's order would be more defensible on federal constitutional grounds if he had flatly banned courtroom sketching of the jurors, and if he had

extended the ban to those who sketch for the print media as well as to those who sketch for television.

But balancing the doubts that this portion of the judge's second order generates against the procedural posture of the case, I conclude that the application for a stay should be denied. Surely all of the lofty historical reasons which have been advanced in our opinions to support the right of public and press access to criminal trials contemplate the traditional criminal trial as a public governmental procedure of some importance to every citizen. I would think that of all conceivable reportorial messages that could be conveyed by reporters or artists watching such trials, one of the least necessary to appreciate the significance of the trial would be individual juror sketches.

*Stuart* is a prototypical example of a recent case in this area which has admonished trial courts to employ their usually considerable discretion to search for other alternatives than prior restraints in order to protect the defendant's constitutional right to a fair trial and the State's interest in a verdict which may be upheld on appeal. I am satisfied that the trial judge has indeed sought for these alternatives here, and I do not find them so demonstrably impermissible as to warrant a stay at this stage of the proceedings. The application is therefore

*Denied.*