UNITED STATES of America,
Plaintiff-Appellee,

v.

Gillam KERLEY, Defendant-Appellant.

No. 84–1026.

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1984.

Decided Jan. 30, 1985.

Thomas D. Sykes, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Gillam Kerley, pro se.

Before CUMMINGS, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

Defendant-Appellant Gillam Kerley was indicted on September 8, 1982, for allegedly failing to register for the draft as required. Kerley filed a pre-trial motion requesting permission to photograph, record and broadcast the in-court proceedings in his case. Apparently, Kerley wished to record

the trial on video-tape. Magistrate Gansner held that Rule 53 of the Federal Rules of Criminal Procedure, which bans cameras in the courtroom, allowed him no discretion and, therefore, denied the motion. Kerley filed an appeal to this court requesting review of the magistrate's order. We dismissed this first appeal for lack of jurisdiction. Kerley then appealed the magistrate's order to the district court in accordance with 28 U.S.C. § 636(b)(1)(A). Judge Doyle entered an order denying defendant's motion for reconsideration of the magistrate's ruling, and Kerley, acting pro se, now appeals the ruling of the district court.

This appeal presents these three issues: (1) whether this court has jurisdiction over the appeal; (2) whether Rule 53 denies a judge discretion to permit photographing and broadcasting of courtroom proceedings; and (3) if so, whether Rule 53 violates appellant's first, fifth or sixth amendment rights. For the reasons which follow, we find appellate jurisdiction proper under 28 U.S.C. § 1291, and we affirm the district court's denial of Kerley's request.[1]

### I. Appellate Jurisdiction

The government argues that "the issue before the court is not applicable [sic] under Title 28 U.S.C. Section 1291." Brief for the United States at 2. We interpret this as a challenge to our appellate jurisdiction. We find, primarily because the first amendment rights Kerley asserts would be lost if this appeal were postponed until after trial, that we have jurisdiction here under the collateral order doctrine expounded in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Except in very narrow classes of cases, only orders resulting in the termination of proceedings in the district court are appealable to the courts of appeals. However, the courts have recognized that some orders, although not technically final judgments, may be "final decisions" within the meaning of 28 U.S.C. § 1291.[2] An order is appealable, even though it is interlocutory, if it meets the following test:

The order (1) must be conclusive; (2) must be collateral; and (3) must "involve an important right which would be 'lost, probably irreparably,' if review had to await final judgment."

*United States v. Dorfman*, 690 F.2d 1217, 1222 (7th Cir.1982) (quoting *Abney v. United States*, 431 U.S. 651, 658, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977)). *See also In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1307 (7th Cir.1984); *In re UNR Industries, Inc.*, 725 F.2d 1111, 1116–18 (7th Cir.1984).

The district court has conclusively determined that Kerley cannot videotape his trial. The United States argues in its brief, however, that the issue whether Kerley has a right to videotape and broadcast his trial is not collateral to the issue whether he has violated the Military Selective Service Act. This contention must fail. The government has not pointed to any connection between Kerley's asserted first amendment rights and the merits of the criminal charges pending against him, and we cannot imagine any such connection. This court has repeatedly held that issues involving access to court proceedings or to records are separable from and collateral to the merits of the underlying litigation. *See, e.g., In re Continental Illinois Securities Litigation*, 732 F.2d at 1307; *United*

---

**1.** The government has asked that this appeal be dismissed as moot. Although the underlying action has been dismissed because the government refused to comply with a discovery order, that dismissal is being appealed and, because the issue may arise again and may continue to evade review, it is not moot. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed. 248 (1982); *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).

**2.** 28 U.S.C. § 1291 provides in pertinent part:

The courts of appeals ... shall have jurisdiction of appeals from all *final decisions* of the district courts of the United States ... except where a direct review may be had in the Supreme Court.
(Emphasis supplied).

*States v. Dorfman,* 690 F.2d 1230, 1231–33 (7th Cir.1982).

The government also argues that no important issues are raised by this appeal with respect to which errors cannot be corrected by ordering a new trial if Kerley is convicted. To some extent this argument is correct as to the fifth and sixth amendment rights asserted. If Kerley were denied a fair trial or a public trial, we could order a new trial on appeal from a conviction. However, the first amendment right to record and broadcast *this trial* would be irretrievably lost if review were postponed. Further, we are not prepared to hold that these first amendment rights are unimportant. We are extremely reluctant to attempt to judge the importance of asserted first amendment rights as they relate to judicial proceedings. And we note that this court has often held that such rights are important enough to justify interlocutory appeals. *See In re Continental Illinois Securities Litigation, supra; United States v. Dorfman,* 690 F.2d at 1231–32; *United States v. Edwards,* 672 F.2d 1289 (7th Cir.1982). *See also United States v. Hastings,* 695 F.2d 1278, 1280 n. 7 (11th Cir.) (first and sixth amendment request to allow cameras in courtroom appealable under *Cohen* doctrine), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2094, 77 L.Ed.2d 303 (1983).

As noted, certain aspects of Kerley's fifth and sixth amendment rights, standing alone, may not be separable from the merits of the underlying criminal charge and may not present issues incapable of resolution after trial. In addition, violations of the fifth amendment right to a fair trial and of the sixth amendment right to a public trial (insofar as this right relates to fairness) are usually not ascertainable until after the trial has taken place. Therefore, we rely primarily on the first amendment rights asserted to find that the order in this case is collateral. However, judicial economy and common sense dictate that we also address at this time the question whether any cognizable fifth or sixth amendment violations are inherent in the circumstances because, if such violations are already apparent, we might be able to correct them before this trial and thereby remove the need for a second trial.

## II. The Merits

### A. *Judicial Discretion Under Rule 53*

Kerley argues that the district court has discretion to determine whether the broadcasting and televising of court proceedings should be permitted in individual cases. He asserts that Rule 53 is not an absolute ban on cameras in the courtroom. However, this interpretation flatly contradicts the plain language of the rule. Rule 53 provides:

> The taking of photographs in the court room during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the court room *shall not* be permitted by the court.

(Emphasis supplied). The words "shall not" can only mean that the rule applies in all situations with no exceptions. *See Estes v. Texas,* 381 U.S. 532, 581–82, 85 S.Ct. 1628, 1652–53, 14 L.Ed.2d 543 (1965) (Warren, C.J., concurring); *Hastings,* 695 F.2d at 1279 n. 5.

Kerley proposes, however, that Fed.R. Crim.P. Rule 2's injunction that the Rules of Criminal Procedure "are intended to provide for the just determination of every criminal proceeding" should be construed to grant the district court discretion to consider, on an ad hoc basis, whether cameras in his case would be appropriate. We recognize that the rules must be interpreted with the interests of justice as a paramount consideration. However, we cannot rewrite Rule 53 under the guise of interpretation.[3] Therefore, unless the rule violates Kerley's constitutional rights, we are

---

**3.** We have found no suggestion in the advisory committee note to Rule 53 or from any other source that the mandatory language of Rule 53 was not intended to have its usual meaning. *See generally* 3A C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 861 (2d ed. 1982). In 1962 the Judicial Conference of the United States adopted a resolution condemning the photographing and broadcasting of courtroom proceedings. This resolution was quoted with approval by Chief Justice Warren in his concurring opinion in *Estes v. Texas,* 381 U.S. 532,

bound to apply it and to hold that the magistrate and district judge acted properly in denying Kerley's request to record his trial electronically.

### B. Constitutional Implications

■ The Eleventh Circuit in *United States v. Hastings*, 695 F.2d at 1280–84, rejected the same constitutional claims pressed here. We are unable to add significantly to the *Hastings* court's analysis and therefore we intend merely to summarize our points of agreement with the Eleventh Circuit.

### 1. Sixth Amendment

■ While members of the news media were the appellants in the *Hastings* case, Hastings himself filed an amicus curiae brief urging, as does Kerley, that his sixth amendment right to a public trial entitled him to record and broadcast his trial. There is no doubt that criminal trials are public events and that weighty concerns about the fairness and integrity of the proceedings require that criminal trials be open to the public. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492–93, 95 S.Ct. 1029, 1044–45, 43 L.Ed.2d 328 (1975). *See also Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), and cases cited therein.

Even though the public will be allowed to attend the proceedings, Kerley asserts that his right to a public trial will be abridged unless he is permitted to electronically record and disseminate the sights and sounds of the proceeding. As the *Hastings* court noted, 695 F.2d at 1284, however, the Supreme Court has expressly rejected this extension of the sixth amendment, concluding:

Nor does the Sixth Amendment require that the trial—or any part of it—be broadcast live or on tape to the public. The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed.

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 610, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978). Consequently, appellant's constitutional challenge to Rule 53 cannot be upheld on the basis of any violation of the sixth amendment.

### 2. First Amendment

The court in *Hastings* found, and Kerley concedes, that because the restrictions at issue regulate only the time, place and manner of news-gathering activities, we must uphold them if they are neutral and reasonable.[4] *Hastings*, 695 F.2d at 1282 & nn. 9, 10 & 11. Brief for Appellant at 27. Thus, our inquiry is whether Rule 53's prohibition on the photographing and broadcasting of the trial " 'unwarrantedly abridge[s] ... the opportunities for communication of thought.' " *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581–82 n. 18, 100 S.Ct. 2814, 2829–30 n. 18, 65 L.Ed.2d 973 (1980) (quoting *Cox v. New Hampshire*, 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941)), *quoted in United States v. Hastings*, 695 F.2d at 1282 n. 11.

■ A *limitation* on the public access to a trial is not subject to the same "strict scrutiny" given a denial of access. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2620–21, 73 L.Ed.2d 248 (1982). All we have in the case before us is a limitation on the

---

582–83, 85 S.Ct. 1628, 1653, 14 L.Ed.2d 543 n. 41 (1965). We note that the District Court for the Western District of Wisconsin has a local rule which prohibits the taking of photographs in the courthouse just before, during and just after judicial proceedings.

**4.** The government argues that because Kerley is not a member of the media he lacks standing to raise the first amendment issue. We find this position erroneous for two reasons. First, Kerley is arguing that he has a first amendment

right to record and broadcast the trial *himself.* Whatever the merits of that position, Kerley certainly has standing to make that argument on his own behalf. Second, the Supreme Court has made it clear that the press's right of access to judicial proceedings is derivative of the public's right. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 608–10, 98 S.Ct. 1306, 1317–19, 55 L.Ed.2d 570 (1978). Therefore, the fact that Kerley is not a reporter has no bearing on his standing to raise this issue.

manner of news coverage; the media can do everything but televise the trial. The limitation can withstand constitutional scrutiny so long as it is reasonable and neutral, as with time, place, and manner restrictions generally. *Cf. id.* at 607 n. 17, 102 S.Ct. at 2620; *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 581–82 n. 18, 100 S.Ct. at 2829–30 n. 18; *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 63 n. 18, 96 S.Ct. 2440, 2449 n. 18, 49 L.Ed.2d 310 (1976). And there is a general consensus that judged by this standard the exclusion of cameras from federal courtrooms is constitutional. *See Hastings,* 695 F.2d at 1282–84; *Dorfman v. Meiszner,* 430 F.2d 558, 561 (7th Cir.1970) (per curiam). *See also Amsler v. United States,* 381 F.2d 37, 53 (9th Cir.1967); *Seymour v. United States,* 373 F.2d 629, 632 (5th Cir.1967); 3A C. WRIGHT FEDERAL PRACTICE AND PROCEDURE: CRIM. 2d § 861, at p. 346 (1982).

The competing considerations which apply to cameras in the courtroom were enumerated in *Hastings.* Kerley, as did Hastings, has waived any prejudice to himself that might result from the presence of cameras in the courtroom. Nevertheless, we agree with the Eleventh Circuit that the government has a significant interest in conducting fair prosecutions. 695 F.2d at 1283. *See also Estes v. Texas,* 381 U.S. 532, 544–51, 85 S.Ct. 1628, 1633–37, 14 L.Ed.2d 543 (1965) (broadcasting may impair the truth-finding function and have an adverse impact on jurors, witnesses and others). This is an elusive point which should be stressed. Even though many rights may be waived by a defendant, a criminal trial is not a game. Rather, a trial plays an important part in preserving order and liberty in our society. While strategic decisions often result in the waiver of some

of the safeguards of a trial, it would be anomalous for a court to close its eyes in advance to what some believe to be impending unfairness and for the government to participate in a plan to hold a trial that could be regarded as unfair. And as noted in *Hastings,* another interest advanced by Rule 53 is the court's interest in preserving the decorum of the courtroom.

The *Hastings* court also identified the first amendment interests that have been recognized by the Supreme Court as weighing in favor of broad public access to trials. Public access to criminal proceedings fosters confidence in the judicial system, provides a check on potential abuses in the system and promotes the truth-finding function of the trial. 695 F.2d at 1283, and cases cited therein. *Cf. In re Continental Illinois Securities Litigation,* 732 F.2d at 1308 n. 9 (recognizing same interests with respect to civil proceedings). Kerley also has argued here that videotaping his trial will ensure that it is reported accurately by the media.

Many of the reasons Kerley offers for allowing him to record or broadcast his trial are attractive. However, we find, as did the Eleventh Circuit, "significant institutional interests supporting the rules at issue here." 695 F.2d at 1284.[5] It is important to note that the issue is not between open and closed proceedings. Rather, we are only concerned with whether it is reasonable to conclude that the *marginal gains* from videotaping and broadcasting an already public trial, which members of the public and media will be free to attend and to report on, are outweighed by the risks and uncertainties the procedure, in the minds of some, entails. Further, the record indicates that the trial court will permit Kerley to record the proceedings on

---

5. In *Dorfman v. Meiszner,* 430 F.2d 558, 561 (7th Cir.1970) (per curiam), we addressed a challenge to the district court rule that banned photographing and radio and television broadcasting from the "environs" of the courtroom. We upheld those portions of the rule which prohibited cameras in and broadcasting from the courtroom itself and immediately surrounding areas but struck down portions not relevant here.

> [T]he law not only allows but compels the courts to insure that judicial proceedings are conducted in an orderly, solemn environment free from the interferences which so often accompany modern news coverage of the events.

These recognized concerns are ample evidence of the reasonableness of Rule 53. The possibility that these judgments will be revised in the future is not sufficient to render the rule unconstitutional.

audiotape. Thus, Kerley's concern about the accuracy of news-reporting should be met by the audiotapes he will be permitted to make. The Eleventh Circuit also correctly pointed out that the rationale underlying Rule 53 is general and system-wide. It is therefore not unreasonable to operate with a nondiscretionary rule and not on an ad hoc basis. *Hastings*, 695 F.2d at 1284. Nothing we have said, of course, reflects any view we may hold about the possible unfairness of cameras in the courtroom. These matters are the subject of debate, but the fact that Rule 53 may be controversial does not render it unconstitutional.

We are not persuaded by Kerley's arguments that the first amendment requires the courts to adapt to changing technology and allow him to videotape his trial. That cameras may be smaller, lighter and quieter is not a change having constitutional significance. It is still not unreasonable to conclude that cameras are qualitatively different from reporters' notetaking and sketching.

Even in an era of lightweight, silent, unobtrusive television cameras, there is a sense that the knowledge of being televised might cause the judge, jurors or witnesses to be distracted—whether by embarrassment, self-consciousness, anxiety or desire to "star." It is not unreasonable, whatever may be the precise facts in any particular trial, for the courts to prefer that the "actors" concentrate on their roles in the trial rather than on their roles on television. No doubt the interest in decorum and concentration that Rule 53 serves would not be enough to justify a total ban on media reporting of trials, but it is enough to justify the narrow limitation on that reporting embodied in Rule 53.

Further, in support of his first amendment claim, Kerley cites cases involving the media's right to copy audio and video tapes used as evidence at trial. *E.g., Application of National Broadcasting Co.*, 635 F.2d 945 (2d Cir.1980). The arguments based on these cases fail to recognize that the copying of an exhibit offered at trial can be accomplished outside of the courtroom and would have no apparent effect on the proceedings themselves. *See generally KPNX Broadcasting v. Superior Court*, 139 Ariz. 246, 678 P.2d 431, 441 (1984) ("'news gathering right' ... means nothing more nor less than the right to attend").

In summary, we find Rule 53's ban on cameras in the courtroom to be a reasonable exercise of the rulemaking power and not in violation of Kerley's first amendment rights. While many of Kerley's arguments, some of which are drawn from experience with cameras in various state courts, support the notion that some broadcasting of trials may be harmless and constructive, such arguments are better directed at those who make the rules.

### III.

Therefore, the decision of the district court is AFFIRMED.[6]

---

**6.** We find it impossible to address conclusively at this time Kerley's fifth and sixth amendment arguments that he will be denied a fair trial unless he is allowed to videotape his trial. Nothing in the record at this early stage indicates this is to be the case. In any event, if he is convicted and appeals the conviction, Kerley will be free to argue, based on occurrences at the trial, that his trial was unfair.