**UNITED STATES of America, Plaintiff,**

v.

**Alejandrina TORRES, et al.,**
**Defendants.**

No. 83 CR 494, 1–4.

United States District Court,
N.D. Illinois, E.D.

March 8, 1985.

Michael E. Deutsch, Dennis Cunningham, Melinda Power, David C. Thomas, Chicago, Ill., for defendants.

Joseph H. Hartzler, U.S. Atty., Chicago, Ill., for plaintiff.

## MEMORANDUM

LEIGHTON, District Judge.

In this criminal case, two national electronics news media corporations, National Broadcasting Company, Inc. ("NBC"), and American Broadcasting Companies, Inc. ("ABC"), move the court for leave to intervene. Their interest in this prosecution is the prospect that at trial before a jury the evidence against defendants will include tapes of intercepted aural and visual communications, which, according to the government, show that before their arrest, defendants were engaged in a seditious conspiracy against the United States, one of the charges in this eight-count superseding indictment.

The corporations, as electronics news media institutions, want these tapes made available to them in one of two ways. First, and this is what they prefer, they want this court to enter orders which would allow them to cooperate, install wires in the courtroom, capture the contents of the tapes simultaneously with their introduction as evidence to the jury. The

corporations argue that because of the nature of the charges in this case, alleged acts of domestic terrorism, the public has an interest in knowing the contents of the tapes as the evidence is presented to the jury. In the alternative, if their first request is not granted, the corporations ask that this court enter an order that would make the contents of the tapes available to them, during or after recesses, at convenient times during the trial.

The government has no objection to these news media requests. Defendants, however, object on the ground that the broadcasting corporations will give a distorted and unfair construction to the intercepted evidence against them; that the media coverage which the broadcasting corporations intend to give to this case will be biased, they already having branded defendants terrorists despite their pleas of not guilty to the government's charges; and that making the audiotapes and videotapes available to the corporations will serve only "to gratify private spite or promote public scandal." For these reasons, defendants insist, the applications by the corporations should be denied because granting them would only give the news media an opportunity to publicize the contents of the tapes and serve the improper purpose of using defendants' trial as an official source for propaganda.

Based on the following facts and applicable law, and having resolved the issues presented, this court grants the motions for leave to intervene, denies the motions for orders granting the broadcasting corporations permission to install wires in the courtroom and instantaneously capture and broadcast the audio and videotapes; but, in the alternative, grants the corporations' motions for an order which, at their expense, will permit them to copy all the audio and videotapes admitted in evidence, promptly after such tapes are presented to the jury at the trial of this cause, but in no event later than the conclusion of the half-day court session at which the tapes are played to the jury.

## I

On June 29, 1983, Alejandrina Torres, Edwin Cortes, Alberto Rodriguez, and Jose Rodriguez were arrested in Chicago by agents of the government on a charge that they were members of a seditious conspiracy against the United States by which the conspirators sought "to achieve their goals and thereby oppose ... the authority of the government of the United States by means of force, terror and violence, including the construction and planting of explosives and incendiary devices at banks, stores, office buildings and government buildings ..." in the metropolitan area of the City of Chicago. Defendants were arraigned; and bail was set at $5,000,000 cash for Alejandrina Torres and $10,000,000 cash for each of the other defendants.

At a conference which the parties were required to hold under a local rule of this court, and at pretrial proceedings that followed, the government disclosed to defendants that at various dates between January 18, 1983 and shortly before the arrests, the United States Attorney for this district, acting by one of his assistants, applied to the Chief Judge of this court for orders pursuant to Section 2518 of Title 18, United States Code, authorizing FBI agents to intercept wire and oral communications in two locations, Apartment 505, 736 W. Buena Street and Apartment 211, 1135 Lunt Avenue, Chicago, Illinois. It appears that agents had reasons to believe Alejandrina Torres and Edwin Cortes were renters of the apartments and the subscribers to the telephone in the Buena Street location.

The orders that issued, included authority for the agents to install devices which enabled them "to surreptitiously enter the [apartment in question] ... and at night if necessary ... for the purpose of installing, concealing, adjusting and ... removing aural interception and visual observation devices ... that will visually monitor and record the activity taking place in furtherance of the [alleged conspiracy]." In all, in addition to interceptions of wire and oral communications, the government as a result of the visual surveillance, obtained ap-

proximately 130 hours of videotapes contained in 52 separate reels which, according to government agents, recorded the activities of defendants, or some of them, within the privacy of the two apartments. In at least one scene captured by one of the cameras, Alejandrina Torres and Edwin Cortes, according to the government, are seen engaged in the act of assembling a bomb.

But on motion of one of the defendants, construed as having been joined in by all of them, this court, after hearing the parties, suppressed the videotapes on three grounds. First, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 to 2520, on which the government relied, did not authorize surreptitious entry of an apartment by agents of the government for the purpose of installing cameras and engaging in the interception of visual, as distinguished from aural communications. Second, even if the statute had so authorized, the United States Attorney had not complied with certain procedural requirements of Title III. Third, no warrant, as that term is known in Fourth Amendment law, had been obtained by the United States Attorney. *See United States v. Torres*, 583 F.Supp. 86 (N.D. Ill.1984).

The government appealed; and on December 19, 1984, the court of appeals reversed the suppression order. *United States v. Torres*, 751 F.2d 875 (7th Cir. 1984). Now, in anticipation of trial of this case on the merits, and on the assumption that only unsuppressed videotapes are involved, the court issues this Memorandum in order to furnish all interested parties with the reasons for its grant of the motions of NBC and ABC for leave to intervene, denial of their motions for orders allowing them to install wires in the courtroom and capture the contents of the tapes simultaneous with their introduction in evidence; and, the reasons for the court's grant of the alternative request of the two broadcasting corporations.

## II

### A

Defendants' only argument against grant of the motions for leave to intervene is in a footnote to their opposition memorandum in which they say that "[c]ounsel has found no cases [sic] which specifically discuss the right of intervention in a criminal matter." This lack of authority for intervention in a criminal prosecution is understandable. "Intervention—a procedure by which an outsider with an interest in a lawsuit may come in as a party though he has not been named as a party by the existing litigants—is a comparatively recent innovation in Anglo-American legal procedure." 7A Wright & Miller, *Federal Practice & Procedure § 1901*. It is a proceeding whereby a person is permitted to become a party in an action between other persons, after which litigation proceeds with both original and intervening parties. *Richins v. Mayfield*, 514 P.2d 854, 85 N.M. 578 (1973). In a criminal case, it is rare that one person ever has enough interest in the outcome of a prosecution of another. For this practical reason, there is no rule governing intervention in a criminal proceeding. Intervention is common in civil actions; and in the federal courts, it is governed by Rule 24 Fed.R.Civ.P.

However, a cursory review of cases involving news media interest in criminal prosecutions (usually involving evidence to be captured or copied) shows that courts, without discussion, have permitted applications to be made for certain relief, or have granted news media organizations leave to intervene. In such cases, news media entities or organizations have been named and treated as applicants or as intervenors. *See United States v. Edwards*, 672 F.2d 1289 (7th Cir.1982); *United States v. Criden*, 648 F.2d 814 (3d Cir.1981); *United States v. Dorfman*, 550 F.Supp. 877 (N.D. Ill.1982); *Application of CBS, Inc.*, 540 F.Supp. 769 (N.D.Ill.1982). It is of no significance that these cases do not discuss the right of news media companies or corporations to intervene in a criminal case; what is important is that they are permit-

ted to enter, and thus become subject to the jurisdiction of the court, a fact that may inure to the protection of defendants and the public. These are the reasons for this court's grant of the motions for leave to intervene by NBC and ABC.

### B

This brings us to the question whether orders should be entered which would allow NBC and ABC to cooperate, install at least three sets of wires in the courtroom, connected to electronics equipment nearby, and simultaneous with their introduction in evidence by the government, capture the contents of audiotapes and videotapes for broadcast by their television stations located throughout the United States. The two corporations argue that this case is newsworthy; they state that the allegations of the indictment (charges of domestic terrorism) make it essential that they, as new media institutions, be allowed to exercise their First Amendment right to access to a courtroom and discharge of their duty to inform the public of this evidence as it is presented to the jury. Although they do not say this, a careful examination of the authorities cited show that this is a request of first impression in a federal court.

Defendants object to this court granting any of the news media requests. They argue that from their arrest until now, they have denied all of the charges made against them; they have insisted that they are not terrorists nor are they conspiratorial criminals. They say that they are Puerto Rican patriots who are fighting for the independence of Puerto Rico, a country defendants say should be an independent nation free of domination and control by the United States. Defendants remind the court that in a voluminous memorandum supporting their motion to dismiss the indictment against them, they recited the history of Puerto Rico when it was a colony of the Spanish Empire, and since their cession to the United States by Spain in 1897. Defendants complain that neither NBC, ABC, nor any entity of the news media, has given them a fair and unbiased treatment in stat-

ing to the public their views that they are prisoners of war in this case, and not criminals. They assert that since their arrest, "the media has [sic] unhesitantly labeled them as terrorists, [and] this highly prejudicial publicity has served to create in the public mind the image of these four Puerto Rican patriots as dehumanized, bomb-throwing maniacs."

NBC and ABC respond to this argument by saying that defendants' views are ideological rhetoric. The corporations argue that the burden is on defendants to show why the access being sought to the audiotape and videotape evidence should be denied; and quoting selected language from *United States v. Edwards*, 672 F.2d 1289, 1294 (7th Cir.1982), they insist that defendants have not carried the burden of proof the law places on them; and for this reason, all of their requests, including installing wires in the courtroom for simultaneous and instantaneous capture of the audiotape and videotape evidence, should be granted.

▮ This court does not agree. In its judgment, poorly as defendants express themselves, they have presented many "articulable facts" which show that the primary request of the two corporations, if granted, would endanger defendants' rights to a fair trial in this prosecution. They have said enough to remind the court that this case will be difficult enough to preside over when it comes to trial. The accusations against defendants are charged with political emotions. Although this court is convinced that defendants mistakenly interpret the history of the relation between the United States and Puerto Rico, it is also convinced that defendants are sincere in the views they hold concerning the way the islands have been treated by the government of the United States, particularly the military, and in the complaints they make about the way the natural resources of those islands have been exploited by multi-national American corporations. To begin this trial from the posture of allowing two of the country's leading broadcast corporations instantaneous ac-

cess to dramatic evidence that casts invidious reflections on defendants is to start this trial on a wrong footing.

The trial of a criminal case implicates the nuances of all constitutional and social values that make us a civilized nation. During its process, the trial judge must keep in mind that his principal purpose is assuring fairness to both sides: the government, on the one hand, the defendant or defendants on the other. *United States v. Kerley*, 753 F.2d 617 (7th Cir. 1984); *see United States v. Portis*, 542 F.2d 414 (7th Cir.1976); *cf. United States v. Chaussee*, 536 F.2d 637 (7th Cir.1976). He must see to it that the trial is so conducted that the jurors, as triers of fact, are not distracted from their tasks; he must see to it that nothing occurs to impede the lawyers in their advocacy of the cause they represent; he must see that witnesses are accorded a full and complete opportunity to give their evidence; he must take steps to afford members of the press all avenues by which they can be present and hear so they can accurately report the proceedings; and finally, the trial judge must give those who come to the public's courtroom full opportunity to see and hear the judicial process as it unfolds during the trial, all of this in an orderly and dignified manner.

A criminal trial is not designed as a forum in which entities of the news media can flex their First Amendment muscles. Nor is it a device attuned to the task of educating absent members of the public to what occurs in a particular criminal case, selected by broadcasting corporations for attention in accordance with their standard of what is newsworthy. As Justice Clark said for the court in *Estes v. Texas*, 381 U.S. 532, 540, 85 S.Ct. 1628, 1631, 14 L.Ed.2d 543 (1965):

> [T]he "primary concern of all must be the proper administration of justice"; that "the life and liberty of any individual in this land should not be put in jeopardy because of the actions of any news media"; and that "the due process requirements in both the Fifth and Fourteenth Amendments and the provisions of the Sixth Amendment require a procedure that will assure a fair trial ...".

In *Chandler v. Florida*, 449 U.S. 560, 574, 101 S.Ct. 802, 809, 66 L.Ed.2d 740 (1981), Chief Justice Burger recognized the point this court has in mind when he said:

> Any criminal case that generates a great deal of publicity presents some risks that the publicity may compromise the right of the defendant to a fair trial. Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law. 449 U.S. at 574, 101 S.Ct. at 809.

There is an additional reason that mandates denial of the primary request of these two corporations. On September 19–20, 1984, the Judicial Conference of the United States met in Washington, D.C. This conference is the statutory, representative body of federal judges, chaired by the Chief Justice of the United States; it is responsible for submitting "suggestions and recommendations to the various courts [of the United States] to promote uniformity of management procedures and the expeditious conduct of court business." 28 U.S.C. Section 331. On its agenda was a report of the Ad Hoc Committee on Cameras in the Courtroom, which had considered a petition filed by twenty-eight separate radio, TV, newspaper and related organizations requesting that Canon 3 A(7) of the Code of Conduct for United States Judges, and Rule 53 of the Federal Rules of Criminal Procedure, be amended to allow radio broadcasting, televising, motion picture and still camera coverage of federal court proceedings. The committee, after careful consideration, unanimously recommended that the petition be denied. The report of the conference shows that the recommendation was approved without a recorded dissenting voice by any judge present. *See Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16 (2d Cir.1984).

Canon 3 A(7), which was sought to be amended, provides, in its relevant part, that:

A judge should prohibit broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions....

Rule 53 prohibits what this Canon requires a judge to bar from the courtroom and its immediate areas. In mandatory language, it states that:

The taking of photographs in the court room during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the court room shall not be permitted by the court. Fed.R. Crim.P., Rule 53, 18 U.S.C.A.

This court, to the extent that it understands the technology involved, can perceive little difference between the wires NBC and ABC want to install in the courtroom, and cameras; both accomplish "broadcasting, televising, recording, or taking photographs in the courtroom ..." prohibited by Canon 3 A(7) and Rule 53. This court will venture the guess that if the primary request of these two corporations is granted, NBC and ABC will, in the future, cite this case to another federal judge as precedent for the proposition that they should be allowed to install cameras in a courtroom, instead of wires. In this court's judgment, the primary request being made to this court by NBC and ABC, if granted, would violate the spirit if not the letter of an important canon and rule that govern the conduct of federal judges, and would contravene the policy declared by the Judicial Conference of the United States when it approved the report of the Ad Hoc Committee on Cameras in the Courtroom.

■ Moreover, in this district there is an even more categorical prohibition of what the two corporations seek by their primary request. Rule 1.52, General Rules of the United States District Court for the Northern District of Illinois, states:

The taking of photographs, radio and television broadcasting or taping in the court environs during the progress of or in connection with judicial proceedings, including proceedings before a United States Magistrate, whether or not court is actually in session, is prohibited.

This rule, limited to the courtroom and its environs, is constitutional. *See United States v. Yonkers Bd. of Educ.*, 587 F.Supp. 51, 53–54 (S.D.N.Y.1984); even though it restricts certain activities otherwise protected by the First Amendment. *Dorfman v. Meiszner*, 430 F.2d 558, 561 (7th Cir.1970). Rules like this one do nothing more than assure "the maintenance of an orderly, dignified environment, free from ancillary distractions, for the solemn conduct of judicial proceedings." *United States v. Cicilline*, 571 F.Supp. 359, 363 (D.R.I.1983); Annot. 14 A.L.R.4th § 6[a] at 121, 134 (1979).

### C

■ The alternative request that NBC and ABC make to this court is more in accord with the decided cases, and thus entitled to a different consideration. What they ask is not permission to intrude into the trial process and install wires in the courtroom with the potential for disruption of the trial; they seek merely access to the audiotapes and videotapes, at convenient recesses of the court, after they have been admitted in evidence. In sum, NBC and ABC are asserting the common law right of access to judicial records, a right that is of non-constitutional origin. *United States v. Edwards*, 672 F.2d 1289, 1294 (7th Cir. 1982); *cf. In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir.1984).

■ There is a strong presumption in support of the common law right to inspect and copy records, *United States v. Peters* (Appeal of Hearst Corporation), 754 F.2d 753, 763 (7th Cir.1985); and permission to inspect, copy, and disseminate the contents of judicial records should be denied only where actual, as opposed to hypothetical, factors demonstrate that justice so requires. *United States v. Edwards, supra,* 672 F.2d at 1294; *cf. United States v. Criden*, 648 F.2d 814, 823 (3d Cir.1981);

see, e.g., Application of CBS, Inc., 540 F.Supp. 769, 771 (N.D.Ill.1982).

■ Of course, in a proper case, after balancing the rights of news media entities with the rights of defendants to a fair trial, access to court proceedings as well as the opportunity to copy documents which are parts of judicial records, can be prohibited, in the exercise of a court's sound discretion. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 603, 98 S.Ct. 1306, 1315, 55 L.Ed.2d 570 (1978); *see Application of CBS, Inc., supra* at 771. While this is so, the burden is on the party seeking to interfere with this common law right to demonstrate that justice requires the denial of access. *Application of CBS, Inc., supra* at 771. It has been emphasized that access of the kind sought here by NBC and ABC "may be denied only if ... 'justice so requires ...'." *In Re Nat. Broadcasting Co., Inc.*, 653 F.2d 609, 613 (D.C.Cir.1981). As this court sees it, defendants, as the only parties who seek to interfere with this common law right, have not demonstrated that justice requires denying NBC and ABC access to the audiotapes and videotapes during convenient recesses of the trial. *Cf. Newman v. Graddick*, 696 F.2d 796 (11th Cir.1983); *see United States v. Miller*, 579 F.Supp. 862 (S.D.Fla.1984). For these reasons, an order, containing provisions for the protection of all the parties, will be entered granting the alternative request.

For example, among others, one of the provisions will be that after the tapes are admitted in evidence, they will be delivered to the Courtroom Deputy who will promptly enter a minute order showing admittance, thus making the tapes a part of the judicial records of this trial. Thereupon, the tapes are to be delivered to the Court Administrator, Mr. H. Stuart Cunningham, who will be responsible for making the tapes available to NBC and ABC, at their costs. This provision is intended by this court to minimize direct contact between lawyers in the case and representatives of news media entities during the trial and thus "provide a 'unified and singular source for the media concerning these proceedings'." *See KPNX Broadcasting Co. v. Arizona Superior Court*, 459 U.S. 1302, 103 S.Ct. 584, 74 L.Ed.2d 498 (1982), per Justice Rehnquist, as Circuit Justice.

So ordered.