OPINION OF THE COURT
Donald J. Mark, J.
The defendant, who is charged with murder, second degree, made an application pursuant to CPL 710.20 (3) to suppress his oral, written and videotaped confessions upon the ground that the same were obtained illegally. A hearing was conducted at which time the oral confession was testified to and the written and videotaped confessions were received as exhibits. The defendant requested the court to view the videotape in camera to avoid any possible prejudicial pretrial publicity; the prosecutor did not oppose. However, Gannett Company, Inc., the publisher of two local newspapers, intervened to oppose this procedure, and Flower City Television Corp., WOKR (Channel 13), a local television station, intervened and applied for permission to copy the videotape for televising.
The media intervened in this case in accordance with the case law which mandates that any application for "closure” be accompanied by notice to the media and an opportunity to be heard (Matter of Herald Co. v Weisenberg, 59 NY2d 378; Gannett Co. v De Pasquale, 43 NY2d 370, affd 443 US 368; Matter of Capital Newspapers Div. v Moynihan, 125 AD2d 34; Matter of Johnson Newspaper Corp. v Parker, 101 AD2d 708). The media treated this issue as one of closure of the courtroom, since the defendant did not want the videotape viewed in open court (People v Glover, 60 NY2d 783; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430; Matter of Associated Press v Bell, 128 AD2d 59; People v Dominy, 116 AD2d 851). However, the precise issue here is whether the media and the public can be denied access to or copying of an exhibit that has been admitted into evidence during a court proceeding.
Because of the reasoning that follows, the application of the press that the videotape be played in open court was granted, and the application of the television station that it be allowed to copy and broadcast the videotape was denied.
The Federal and State case law on this subject is unanimous in holding that any exhibit received at a hearing or trial becomes part of the public record and as such is accessible to the media and public.
*952 The landmark case in this area is Nixon v Warner Communications (435 US 589). There, during the course of a celebrated trial, tape recordings of conversations were entered into evidence, played for the jury in open court and the jurors, reporters and spectators were furnished with earphones and transcripts. The transcripts were not introduced into evidence but were widely reported by the media. The salient holding of that case was a rejection of public copying of the tapes based upon legislation enacted by Congress specifically restricting public access to the tapes. However, the United States Supreme Court recognized a constitutional as well as a common-law right of access to judicial records, but held that this constitutional right was satisfied when the public and the media had the opportunity to attend the trial and observe the evidence and the media had the opportunity to publish the evidence introduced at the trial.
The Second Circuit Court of Appeals in In re National Broadcasting Co. (635 F2d 945) affirmed a District Court decision to allow television networks to copy and televise videotapes entered into evidence at a criminal trial subject to the qualifications that the tapes were to be copied at the close of the trial day in which each tape was admitted into evidence. During the trial the tapes could be seen and heard by journalists and spectators and verbatim transcripts of the contents of the tapes were distributed to the jury and the press. The court ruled that the tapes were evidence and therefore under common-law principles were available to the public and the media unless there was a strong showing of reasons why they should not be made public.
A case closely paralleling this case is United States v Carpentier (526 F Supp 292, affd 689 F2d 21). In that case, at a sentencing hearing the defendant made a tactical decision not to have tapes played in court and to bypass any examination of witnesses concerning the contents of the tapes, and the Government moved to admit the tapes into evidence in court. The District Court held that the tapes became a matter of public record upon their admission into evidence and so the media and the public should be allowed to hear the tapes and be given access to them. That court further held that the fact that the tapes were not played during the hearing was not dispositive since by their admission into evidence they became part of the public record.
A case illustrating both facets of this principle is United States v Miller (579 F Supp 862). There, at the initial bail *953 hearing the Government relied upon an affidavit from a Government agent in which he described in detail conversations recorded on audio and/or video tapes, and he was extensively cross-examined as to their contents. Such tapes, however, were never introduced into evidence at this hearing. At a subsequent bail reduction appeal hearing, two other audio and videotapes were offered into evidence in their entirety and parts were played in open court. The District Court held that the tapes received into evidence at the second hearing became part of the public record in their entirety although only partially played in court, but that the tapes referred to in the affidavit at the first hearing were not accessible to the media because they were not offered into evidence.
New York case law is in complete accord with the Federal case law. The Appellate Division, Second Department, in Matter of Werfel v Fitzgerald (23 AD2d 306), after tracing the history of the right of inspection of records from the King’s courts, concluded that records prior to trial were not available for public inspection until there were proceedings in open court, following which the records were accessible to all persons. Matter of Hearst Corp. v Vogt (62 AD2d 840) flatly held that photographs which were received into evidence as exhibits during a trial became part of the official record and the press could not be denied the right to inspect them. Implicit in the holding in Matter of WNYT-TV v Moynihan (97 AD2d 555) that the trial court did not abuse its discretion in not permitting the media to copy tape recordings introduced at trial, was a finding that the common-law right to inspect judicial records was observed by providing the media with a transcript.
Thus, it is manifest that since the videotapes have been received into evidence at the hearing, the media and the public cannot be denied access to its viewing, whether or not this occurs in court. The media is also entitled to a transcript of the contents of the videotape.
However, the fact that the media may be entitled to view the videotape and to be furnished with a copy of the transcript of the same does not likewise mean that it has the unrestricted right to copy and broadcast its contents. The public and the media have a constitutional right to be present in court at a hearing and/or trial and to have access to all the evidence presented therein (Nixon v Warner Communications, 435 US 589, supra), but the right to copy judicial records is a *954 common-law right, not a right of constitutional dimension (United States v Beckham, 789 F2d 401; United States v Edwards, 672 F2d 1289; Belo Broadcasting Corp. v Clark, 654 F2d 423; United States v Torres, 602 F Supp 1458, cert denied 470 US 1087). Since the request of the media to copy is essentially a request to duplicate information already made available to the public and media, the trial court has more discretion in balancing the defendant’s right to a fair trial against the media’s right to copy (United States v Beckham, supra).
Thus, in Nixon v Warner Communications (supra), the United States Supreme Court pronounced the rule that the right to copy judicial records is a common-law right only and is not absolute, that every court has supervisory power over its own records and files, that the copying may be denied where court files might become a vehicle for improper purposes and that the decision as to copying is best left to the sound discretion of the trial court. That court then upheld the District Court’s decision denying the broadcaster permission to copy, broadcast and sell to the public portions of the tapes played at the trial upon an unrelated ground.
Many other Federal and State cases have rejected applications by the media to copy and broadcast tape recordings where a valid reason justified such denial (Nixon v Warner Communications, supra [specific legislation enacted by Congress governing release of tapes]; United States v Beckham, supra [pretrial publicity would be prejudicial relative to ability to select jury in view of likely sequestration problems]; United States v Webbe, 791 F2d 103 [administrative difficulties involved since only parts of tapes were admitted plus fair trial considerations in view of other charges pending against the defendant]; United States v Edwards, 672 F2d 1289, supra [defendant on trial facing trial on additional charges and public dissemination might make it difficult to select a jury]; United States v Criden, 648 F2d 814 [parts of tapes determined to be impermissibly injurious to third parties withheld from copying]; In re National Broadcasting Co., 653 F2d 609 [deletion from tapes of reference to innocent third party prior to release for copying]; United States v Pageau, 535 F Supp 1031 [decision as to admissibility was not made until time of trial]; Matter of WNYT-TV v Moynihan, 97 AD2d 555, supra [damage or destruction of videotape could occur during copying and this could prevent a reply to the jury during deliberations if requested]; Matter of Hearst Corp v Vogt, 62 AD2d 840, *955 supra [pretrial publicity might be prejudicial to other defendants whose trials were pending]).
There is Federal case law to the contrary. As was noted in United States v Edwards (supra), those courts which find the presumption of access to be strong tend to discount the risk of harm to future proceedings, whereas those which minimize the importance of the presumption accentuate the potential jeopardy to future proceedings. For example, in United States v Criden (supra), most of tapes were released for broadcasting although there was a strong possibility of a retrial and the trial of codefendants was still pending; in In re National Broadcasting Co. (supra), tapes were permitted to be copied for televising although trial court had yet to rule on motion for mistrial and retrial was a possibility; in In re National Broadcasting Co. (635 F2d 945, supra), videotapes were released for copying and television with the finding that the likelihood of enhanced public awareness in relation to subsequent trials did not justify curtailing the public’s right of access; in United States v Mitchell (551 F2d 1252, read on other grounds sub nom. Nixon v Warner Communications, 435 US 589, supra), it was held that the mere possibility of prejudice in the event of a retrial did not outweigh the public’s right of access to audiotapes; in United States v Miller (579 F Supp 862, supra), the media was permitted to copy videotapes received during a bail reduction appeal hearing although the defendants claimed their right to a fair trial was jeopardized (numerous Federal District Court cases in accord were cited); and in United States v Pageau (535 F Supp 1031, supra), after a mistrial access to videotapes for copying was allowed despite the defendant’s claim that this would prejudice potential jurors at his retrial.
Therefore, this court exercised the discretion reposed in the trial courts by Nixon v Warner Communications (435 US 589, supra); balanced the competing interests as recommended by United States v Beckham (789 F2d 401, supra); found that there had been extensive media coverage of this incident from its inception to the hearing; and concluded that the videotape should not be copied and televised because such additional pretrial publicity would make jury selection difficult.
At this juncture it would seem that if the videotape is found to be admissible (United States v Pageau, 535 F Supp 1031, supra), and it is thereafter played at the trial for the jury, *956 there would be no valid reason to deny the media access to the videotape for copying and televising subsequent to such playing (In re National Broadcasting Co., 653 F2d 609, supra; United States v Criden, 648 F2d 814, supra; In re National Broadcasting Co., 635 F2d 945, supra; United States v Torres, 602 F Supp 1458, cert denied 470 US 1087, supra).